Submitted on record and briefs September 26, affirmed November 16, 1994, petition for review denied January 24, 1995 (320 Or 507)

# JARROD BROWN,
*Appellant,*

*v.*

# G. H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

## (CV 93-273; CA A82391)

885 P2d 707

Theresa M. Kohlhoff filed the brief for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Petitioner appeals a judgment dismissing his petition for post-conviction relief as untimely. He contends that the dismissal was unwarranted because his petition falls into a statutory exception to the applicable limitations period. We reject that contention and affirm the post-conviction court's dismissal.

Petitioner was convicted of various crimes and appealed. That appeal was voluntarily dismissed on January 6, 1992. More than a year later, on March 31, 1993, petitioner filed a petition for post-conviction relief.

Defendant moved for summary judgment, arguing that the petition was time-barred under ORS 138.510(2), which, at the time, generally required persons seeking post-conviction relief to file their petitions within 120 days after their convictions, or resulting direct appeals, became final. The statute provided:

> "A petition pursuant to [the Post-Conviction Hearing Act] must be filed within 120 days of the following, *unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition*:
>
> "(a)  If no appeal is taken, the date the judgment or order on the conviction was entered in the register.
>
> "(b)  If an appeal is taken, the date the appeal is final in the Oregon appellate courts." (Emphasis supplied.)[1]

In opposing summary judgment, petitioner averred:

> "I did not file for post conviction relief prior to March 31, 1993, because I had been told by my previous attorney, * * * that I should wait until I had served approximately 36 months on my sentence before I filed for post conviction relief. I was unaware of the 120 day statute of limitation as I am a layman and unlearned in the law."

Petitioner argued that those facts triggered the emphasized "escape clause" in ORS 138.510(2), which excuses otherwise untimely filings. In particular, petitioner asserted that, given

---

[1] ORS 138.510(2) has since been amended to provide for a two-year limitations period. Or Laws 1993, ch 517, § 1. That longer limitation period applies to petitions filed after November 4, 1993.

his attorney's affirmative advice to wait three years before filing a petition and his justifiable reliance on that advice, his post-conviction claims "could not reasonably have been raised" within the 120-day limitations period. The post-conviction court rejected those arguments and dismissed the petition.

On appeal, petitioner reiterates his argument that his petition was timely as being within the ORS 138.510(2) escape clause. Defendant responds that, although certain previous decisions, including *Fine v. Zenon*, 114 Or App 183, 834 P2d 509 (1992), might support petitioner's position, those decisions were implicitly overruled by *Bartz v. State of Oregon*, 314 Or 353, 839 P2d 217 (1992). Under *Bartz*, defendant argues, petitioner's untimeliness is not excused.

In *Fine v. Zenon, supra*, the petitioner's direct appeal was dismissed on May 23, 1990, but his attorney failed to inform him of that fact until January 17, 1991, long after the 120-day statute of limitations had run. The petitioner filed his original petition immediately thereafter, on January 25, 1991. The post-conviction court dismissed the petition as untimely, and we reversed, holding that the plaintiff's circumstances triggered the ORS 138.510(2) escape clause. In so holding, we concluded that, because petitioner did not know, and reasonably could not have known, that his appeal had been dismissed, the grounds for relief asserted in his petition could not reasonably have been raised within the 120-day limitations period.[2] Central to that holding was our recognition that the petitioner could not reasonably have learned of the dismissal of his appeal through any source other than his attorney:

> "Dismissals by the Court of Appeals on motion are not published in the official reports or elsewhere. Petitioner was not on constructive notice that we had granted his motion to dismiss. He was represented by counsel, and it was counsel's duty to keep him abreast of procedural developments." 114 Or App at 187.

---

[2] In *Fine*, we concluded that, notwithstanding arguably contrary language in ORS 138.510(2), "a timely petition is not prerequisite to the filing of an untimely petition that raises meritorious issues that could not reasonably have been raised within the 120-day limitation period." 114 Or App at 186. *Bartz v. State of Oregon, supra*, 314 Or at 358, adopts the same construction.

Thereafter, the Supreme Court decided *Bartz v. State of Oregon, supra.* The petitioner in *Bartz* sought postconviction relief on the ground that his trial counsel had failed to advise him of a possible statutory defense. Petitioner argued that his petition, which was filed more than 120 days after his conviction became final, was nonetheless timely under the escape clause because he did not learn of the potential defense until after the 120-day period had run. In rejecting that argument, the Supreme Court examined the escape clause's legislative history and concluded that the legislature intended to limit that provision's operation to cases in which the petition relies on "information that did not exist or was not reasonably available to [the] defendant within the 120-day period following conviction." 314 Or at 359. Applying that construction to the facts before it, the court concluded:

> "Given the specific nature of Bartz's claim, the issue becomes whether the extant statutes pertaining to a particular criminal offense constitute *information that is reasonably available to a defendant convicted of that offense.* It is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them. Accordingly, we hold that the relevant statutes were reasonably available to Bartz when his conviction became final. The failure of Bartz's counsel to advise him of all available statutory defenses thus is not a 'ground[] for relief * * * which could not reasonably have been raised' timely." 314 Or at 359-60. (Citations omitted; emphasis supplied.)

Contrary to defendant's suggestion, we perceive no inconsistency between *Fine* and *Bartz.* Although the petitioners in both cases blamed their tardiness on their attorney's failure to apprise them of some vital fact, the information at issue in *Bartz* was published and made available to the public by ordinary means. In *Fine*, it was not.

■     This case is analogous to, and controlled by, *Bartz.* Petitioner alleges that he was unaware that his petition was subject to a 120-day limitations period because he relied on his previous attorney's advice, which implied a longer limitations period. However, as in *Bartz*, the information he lacked was embodied in statutes that were published and made

available to the public by ordinary means. Those statutes were "reasonably available" to petitioner.

■        We recognize that counsel's alleged active misrepresentation in this case differed from the passive failure to inform in *Bartz*. That fact, however, is irrelevant to the *Bartz* analysis. *Bartz* makes it clear that the applicability of the escape clause turns on whether the information *existed or was reasonably available to the petitioner*, and not on whether the petitioner's failure to seek the information was reasonable.

Affirmed.