LAGESEN, P.J.
*623 In 2009, petitioner pleaded guilty to one count of unlawful delivery of methamphetamine. The federal government then deported him to Mexico. Six years later, in 2015, he filed a petition for post-conviction relief in which he alleged that he received constitutionally inadequate assistance with regard to the plea. His petition admitted that it was untimely under the two-year limitation period in ORS 138.510(3) but asserted that it satisfied the "escape clause" of that statute, which permits a late filing if the grounds alleged in the petition "could not reasonably have been raised" within the limitation period. The delay, petitioner alleged, was attributable to the obstacles he faced in obtaining legal materials or legal counsel while in Mexico. Applying this court's precedent, the post-conviction court dismissed the petition, ruling that the grounds for relief in the petition were based on information that existed and was publicly available from the time that *550 petitioner's conviction was entered and that, under controlling precedent, the fact that petitioner was unable to appreciate or reasonably failed to seek that information due to his personal circumstances was not sufficient to bring his petition within the escape clause. Although petitioner contends that that precedent was wrongly decided and has been called into question by a later Supreme Court decision, we decline to overrule it and, therefore, affirm.
I. BACKGROUND
The criminal charges underlying this post-conviction case were filed in December 2008, after police stopped petitioner's car for a traffic infraction and discovered methamphetamine during an ensuing search of the car. Petitioner was charged with one count of unlawful delivery of methamphetamine and one count of unlawful possession of methamphetamine, both felonies. The following month, he pleaded guilty to unlawful delivery and was sentenced to three months' probation; the charge of unlawful possession was dismissed. The judgment of conviction was entered in Washington County in January 2009, and petitioner did not appeal.
*624 Petitioner, who was a Mexican citizen, was released immediately after sentencing into the custody of Immigration and Customs Enforcement (ICE), and he was deported to Mexico in March 2009. Petitioner eventually reentered the United States, and he was taken into ICE custody in September 2014.
In January 2015, petitioner initiated these post-conviction proceedings, alleging various grounds on which his trial counsel had been constitutionally deficient when representing him in connection with the drug charges. Petitioner acknowledged that his petition had not been filed within the two-year limitation period set forth in ORS 138.510(3), but he alleged that his delay in filing was excusable due to his circumstances after being deported. Specifically, he alleged that it would have been extraordinarily difficult for someone in his position-indigent, functionally illiterate, unable to speak English, and residing in a rural part of Mexico-to initiate post-conviction proceedings in Washington County. Additionally, he alleged, he had been in hiding during his time in Mexico because of threats on his life by a drug cartel, providing a further obstacle to his timely filing.
According to petitioner, it was not until after speaking with an immigration attorney, upon being taken into ICE custody in September 2014, that petitioner discovered the immigration consequences of his conviction for delivery of a controlled substance-namely, that the conviction would prevent him from obtaining asylum or gaining legal status in the United States. (Petitioner explained that he previously believed that he had been deported in 2009 as a consequence of his illegal entry into the United States, and not as a consequence of his conviction.)
Petitioner also attached to the petition two additional declarations describing obstacles that he faced in filing for post-conviction relief from Mexico. The first was from one of petitioner's friends, Marisela Reyna Mandujano, who described her efforts on petitioner's behalf to obtain information on filing for post-conviction relief, including efforts to obtain information from the Washington County Courthouse. The second declaration came from Eidar Gonzales, a private investigator who described his own efforts to obtain *625 information about the post-conviction process, including contacting the Mexican consulate, contacting the United States Embassy in Mexico, emailing and calling attorneys in Mexico, and searching online for forms that would assist someone in filing for post-conviction relief. In the declaration, Gonzales opined that "it would be virtually impossible for a deported, Mexican born, Mexican educated, indigent, Spanish speaking only, 5th grade completed, functionally illiterate, 23 year old male residing in rural Mexico, without access to the internet to obtain any information concerning Post Conviction Relief or the process for initiating a Post-Conviction action in Washington County."
In response to the petition, the state moved to dismiss, pursuant to ORCP 21 A(9), on the ground that it was untimely. The state argued that petitioner's allegations concerning his particular circumstances-including his indigence, inability to understand English, and living situation in Mexico-were *551 irrelevant to whether he reasonably could have filed his petition for purposes of ORS 138.510(3). Rather, the state contended, under well-established law applying the escape clause of that statute, "[t]he only issue is whether the information was available. Here, the information that forms the basis of this claim was available immediately after petitioner's conviction. The reasonableness of the petitioner's failure to file a claim within two years cannot trigger the escape clause under ORS 138.510(3)." The post-conviction court agreed with the state, ruling that the "case law right now is dead set against the Petitioner's position," and it entered a judgment dismissing his petition as untimely.
Petitioner now appeals that judgment. He concedes that the post-conviction court's observation about the case law was partially correct-at least with respect to certain Court of Appeals decisions, which he acknowledges have "refused to consider the individual circumstances of a petitioner when deciding whether he could reasonably have raised a claim during the statute of limitations period." But, he argues, those cases are inconsistent with, and have been overruled by, the Supreme Court's more recent pronouncement in Verduzco v. State of Oregon , 357 Or. 553, 571, 355 P.3d 902 (2015), which holds that "the question whether a *626 claim reasonably could have been raised earlier will vary with the facts and circumstances of each claim."
II. ANALYSIS
A. Standard of Review
We review an ORCP 21 A(9) dismissal of a petition as untimely for errors of law. Zsarko v. Angelozzi , 281 Or. App. 506, 508, 385 P.3d 1239 (2016), rev. den. , 361 Or. 312, 393 P.3d 1174 (2017). "Our review * * * is limited to the face of the pleadings. In conducting that review, we assume the truth of all allegations in the [petition] and give [petitioner], as the nonmoving party, the benefit of all favorable inferences that could be drawn from those allegations." Kelly v. Lessner , 224 Or. App. 31, 33, 197 P.3d 52 (2008).
B. The Escape Clause
The timeliness of the petition in this case turns on the proper interpretation of the escape clause of ORS 138.510(3), which allows an untimely filing if the grounds for relief "could not reasonably have been raised" within the otherwise applicable two-year statute of limitations for post-conviction petitions. As petitioner's arguments recognize, our case law has supplied that clause with a well-defined meaning that conflicts with the one that petitioner urges us to adopt.
1. Pre- Verduzco cases
Much of our case law concerning the escape clause derives from the Supreme Court's decision in Bartz v. State of Oregon , 314 Or. 353, 839 P.2d 217 (1992). In Bartz , the Supreme Court considered the timeliness of a petitioner's claim that trial counsel failed to advise him of a possible statutory defense before the petitioner pleaded guilty. The petitioner alleged that his trial lawyer's dereliction, to which the petitioner also attributed his failure to meet the post-conviction filing deadline, demonstrated that he could not reasonably have raised his claim timely because he did not know about the statutory defense, and his lawyer's failure to discuss it with him, until after the expiration of the post-conviction limitations period. Rejecting that argument, the court held that the legislature had intended the *627 escape clause to be "construed narrowly," 314 Or. at 359, 839 P.2d 217, and it held that the statutes relevant to the petitioner's possible defense were "reasonably available" to him by the mere fact that they had been published by the legislature. The court explained:
"Given the specific nature of Bartz's claim, the issue becomes whether the extant statutes pertaining to a particular criminal offense constitute information that is reasonably available to a defendant convicted of that offense. It is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them . See *552 Dungey v. Fairview Farms, Inc. , 205 Or. 615, 621, 290 P.2d 181 (1955) (every person is presumed to know the law). Accordingly, we hold that the relevant statutes were reasonably available to Bartz when his conviction became final. The failure of Bartz's counsel to advise him of all available statutory defenses thus is not a 'ground[ ] for relief * * * which could not reasonably have been raised' timely."
Id . at 359-60, 839 P.2d 217 (emphasis added).
Although Bartz itself involved the availability of information relating to the merits of the asserted grounds for relief, we subsequently extended the Bartz analysis to information relating to the act of filing the petition. Brown v. Baldwin , 131 Or. App. 356, 361, 885 P.2d 707 (1994), rev. den. , 320 Or. 507, 888 P.2d 568 (1995). In Brown , we considered the application of the escape clause in the context of a petitioner who had been affirmatively misadvised by criminal trial counsel regarding the deadline for filing for post-conviction relief. We explained that trial counsel's "active misrepresentation" was "irrelevant to the Bartz analysis": " Bartz makes it clear that the applicability of the escape clause turns on whether the information existed or was reasonably available to the petitioner , and not on whether the petitioner's failure to seek the information was reasonable." Id. at 361, 885 P.2d 707 (emphasis in Brown ).
We have since adhered to that analysis, concluding that a petitioner's inability to understand or act upon published law-or other generally available information-will not delay the time in which to file a petition. For example, *628 in Long v. Armenakis , 166 Or. App. 94, 103, 999 P.2d 461, rev. den. , 330 Or. 361, 6 P.3d 1102 (2000), we expressly declined "to adopt a standard of actual knowledge for a person who forgoes legal representation or advice and remains, by his own choice, ignorant of possible grounds for seeking post-conviction relief." (Emphasis added.) We then held, in Benitez-Chacon v. State of Oregon , 178 Or. App. 352, 355, 37 P.3d 1035 (2001), rev. den. , 334 Or. 76, 45 P.3d 450 (2002), that the petitioner was presumed to know immigration laws and, consequently, that his subjective lack of awareness of the legal consequences of his plea did not delay the time for filing his petition under ORS 138.510. And, in Fisher v. Belleque , 237 Or. App. 405, 411, 240 P.3d 745 (2010), rev. den. , 349 Or. 601, 248 P.3d 419 (2011), which involved a particularly stark application of the rule, we rejected a petitioner's contention that his mental illness rendered him incapable of appreciating the significance of information that was publicly available: " Bartz and the subsequent case law * * * make clear that the reasonableness of a petitioner's failure to act on information that is available is simply not enough to trigger the escape clause of ORS 138.510(3). In fact, it is 'irrelevant.' " 237 Or. App. at 411, 240 P.3d 745 (quoting Brown , 131 Or. App. at 361, 885 P.2d 707 ).
2. Verduzco
That was the state of the law in 2015, when the Supreme Court issued its decision in Verduzco . The court allowed review in order to consider the principles by which Oregon courts should exercise their authority to apply new federal constitutional rules retroactively in state post-conviction proceedings. More specifically, the question involved the retroactive application of the Supreme Court's decision in Padilla v. Kentucky , 559 U.S. 356, 366-67, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), which held that counsel's failure to give correct advice regarding clear deportation consequences of a conviction amounted to ineffective assistance under the Sixth Amendment to the United States Constitution. However, the court did not ultimately reach the retroactivity question on which it had allowed review, because it determined that the petitioner's grounds for relief were barred by the rule against successive petitions set out in ORS 138.550(3). Verduzco , 357 Or. at 574, 355 P.3d 902.
*629 In reaching that conclusion, the Supreme Court explained that ORS 138.550(3) (the rule against successive petitions) and ORS 138.510(3) (the statute of limitations) contain identically worded "escape clauses." Before analyzing the text of those clauses, the court cautioned that, although worded identically, they were enacted at different times and in different contexts, so the court could not assume, as the parties had, that Bartz 's interpretation of ORS 138.510(3)"necessarily governs the interpretation of the *553 escape clause in ORS 138.550(3), which was enacted 30 years earlier." 357 Or. at 565, 355 P.3d 902. And, the court observed, because the 1993 legislature discussed the escape clause at some length in deciding whether to extend the period of limitation after Bartz was decided, the court also could not "assume that Bartz provides the final answer on the meaning of ORS 138.510(3), as amended in 1993." Id.
The court then turned to the construction of the escape clause of ORS 138.550(3) specifically. The court explained that "the word 'could' asks whether a petitioner was 'capable of' raising the ground for relief in the first petition that later was raised in a second petition," and that, in conjunction with the adverb "reasonably," the question under ORS 138.550(3) is not whether a petitioner "conceivably" could have raised the grounds for relief in an earlier petition but whether "the petitioner reasonably could have raised those grounds for relief earlier, a question that calls for a judgment about what was 'reasonable' under the circumstances." Id. at 566, 355 P.3d 902.
As context for what "reasonably" means, the court noted the different types of cases in which escape-clause questions arise. In some cases, the court explained, the petitioners alleged that they could not reasonably have raised grounds for relief earlier because those grounds depended on newly discovered facts; the applicability of the escape clause in those cases "turned on whether the petitioners persuaded the post-conviction court that the facts on which their new grounds for relief depended could not reasonably have been discovered sooner." Id . In other cases, the petitioners had argued that they could not reasonably have raised a ground for relief earlier because of changes in the law, as opposed to newly discovered information. Id.
*630 It was the latter type of issue that was before the court in Verduzco -a change in the law. And it was toward that type of issue that the Supreme Court directed its discussion of the escape clause, concluding that " 'whether an issue reasonably could be anticipated and raised does not depend-at least not in a per se way-on whether the issue has been definitively resolved by the courts.' Rather, the question whether a claim reasonably could have been raised earlier will vary with the facts and circumstances of each claim." 357 Or. at 571, 355 P.3d 902 (quoting Long , 166 Or. App. at 97, 999 P.2d 461 ).
After that discussion, in the abstract, of the general framework for determining whether an issue reasonably could be anticipated for purposes of the ORS 138.550 escape clause, the court concluded that it did not need to apply that framework to resolve whether the petitioner in that case was entitled to the protection of the escape clause. That was because, regardless of whether the petitioner reasonably could have anticipated the issue decided in Padilla , "[t]he fact is that, in this case, he did." 357 Or. at 573, 355 P.3d 902. And, the court expressly reserved the question "whether ORS 138.510(3) imposes the same or a different standard; that is, we need not decide whether the differing context and legislative history of ORS 138.510(3), which was enacted in 1989 and amended in 1993, lead to a more stringent or a more forgiving standard of reasonableness." Id. at 573-74, 355 P.3d 902.
3. Effect of Verduzco and continuing viability of Brown/ Fisher
Petitioner's argument in this case is largely premised on the theory that Verduzco expressly repudiated a "capable of raising" standard in favor of a circumstances-specific analysis of the escape clause that would take into account his deportation and circumstances in Mexico, as well as the unsuccessful efforts he made to have someone file on his behalf.
First, we are not persuaded that Verduzco directly or indirectly overruled our line of cases, following Bartz , holding that the applicability of the ORS 138.510(3) escape clause turns on whether the information pertinent to a petitioner's claims was available, and not on whether a *631 petitioner's failure to access that information was reasonable. We recently rejected a similar argument in Gutale v. State of Oregon , 285 Or. App. 39, 395 P.3d 942, rev. allowed , 361 Or. 885, 403 P.3d 760 (2017), in which the petitioner argued that Verduzco had called into doubt our holding in Benitez-Chacon , which applied Bartz . We explained that, "apart from noting that the court 'cannot assume that Bartz provides the final answer on the meaning of ORS 138.510(3), as amended in 1993,' *554 357 Or. at 565 [355 P.3d 902], Verduzco provides no further guidance as to the meaning of that statute or the role that Bartz should play in construing it." 285 Or. App. at 44, 395 P.3d 942.
In addition to the fact that Verduzco does not address ORS 138.510 or the role that Bartz should play in its construction, Verduzco itself was directed at a very different type of "escape clause" question. As we emphasized above, the relevant "circumstances" in Verduzco related to a petitioner's ability to anticipate changes in the law, not circumstances related to whether a petitioner will be deemed to know existing law. Verduzco does not mention the principle that persons are presumed to know the law, let alone call it into doubt as it relates to the escape clause in ORS 138.510(3).
Second, petitioner has not persuaded us that cases like Fisher and Brown were plainly wrong, as petitioner must for us to overrule them. That standard is a "rigorous" one, grounded in presumptive fidelity to stare decisis . State v. Civil , 283 Or. App. 395, 417, 388 P.3d 1185 (2017). Fisher and Brown were considered cases, based on engaged analysis of the wording of the escape clause and the Supreme Court's analysis in Bartz . Although petitioner's proposed interpretation of the escape clause is not unreasonable, that alone is insufficient to show that we were plainly wrong when we addressed and rejected that interpretation in Fisher and Brown , concluding that the terms of the statute and Bartz pointed a different direction. Accordingly, we adhere to the reasoning of those cases.[1]
*632 As petitioner all but concedes, our adherence to those cases forecloses his argument in this case. There is no dispute that the laws and cases relevant to his petition and to the availability of post-conviction relief were published by the legislature and the courts, respectively, in the ordinary manner and were available to the public generally during the two years after his conviction. See, e.g. , Padilla , 559 U.S. at 369, 130 S.Ct. 1473 (decided in 2010). The "reasonableness of a petitioner's failure to act on information that is available is simply not enough to trigger the escape clause of ORS 138.510(3)." Fisher , 237 Or. App. at 411, 240 P.3d 745.[2]
4. Representations by Washington County Courthouse staff
Last, we briefly address an issue that arose during questioning at oral argument with regard to the possibility that some act or representation by staff at the Washington County Courthouse might have prevented petitioner from filing his petition during the limitations period. Cf. Winstead v. State of Oregon , 287 Or. App. 737, 403 P.3d 444 (2017)
*555 (holding that the petitioner's allegations satisfied the escape clause where the court's appointment of counsel before the *633 filing of a pro se petition, coupled with appointed counsel's failure to file a timely petition, prevented the petitioner's filing within the two-year period).
In this case, petitioner alleged, among other things, that the escape clause should be applied because of a "Washington County staff person's position that [petitioner] needed to appear in person to file for Post-Conviction relief." That allegation is supplemented by an attached declaration from Mandujano, who described at least three different responses from the staff person who assisted her, including: (1) uncertainty about what should be done; (2) an assertion that "a person needed an attorney"; and (3) mention of a "possibility" of filing directly if documents coming from Mexico were in English and prepared by petitioner himself or by his attorney.[3]
Assuming for the sake of argument that those allegations otherwise might be sufficient to bring this case in line with Winstead , neither the petition nor its attachments identify when Mandujano's contacts with the Washington County Courthouse staff occurred. Mandujano's declaration omits any mention of the date or general time frame in which she went to the courthouse for information on filing for post-conviction relief. This is critical because, for the alleged misinformation from the circuit court to excuse petitioner's untimeliness under the reasoning in Winstead , that misinformation would have had to have been conveyed to petitioner before the expiration of the limitations period. If it was supplied after the expiration of the period, then it played no role in petitioner's failure to meet the filing deadline. But, the petition and its attachments provide no basis on which to reasonably infer that Mandujano's interactions *634 occurred during the two-year filing period or had any effect on petitioner's ability to file the petition during that time. See ORS 138.510(3) (the two-year limitation period applies "unless" the court finds that the grounds for relief could not reasonably have been raised in a timely petition); Verduzco , 357 Or. at 565, 355 P.3d 902 (explaining that the use of the word "unless" in the identically worded escape clause of ORS 138.550 puts the burden on the petitioner to show that a ground for relief comes within that escape clause). Accordingly, the allegations regarding representations by court staff are insufficient to bring the petition within the escape clause under the circumstances of this case.
Affirmed.

Petitioner suggests that our decision in Stahlman v. Mills , 238 Or. App. 606, 243 P.3d 786 (2010), rev. den. , 349 Or. 654, 249 P.3d 542 (2011), supports his claim that the escape clause should be applied in a circumstances-specific manner. We disagree. In Stahlman , the petitioner argued that his filing delay was excusable because, in the 12 years after his sentencing, he had been "incarcerated in federal correctional institutions outside Oregon and had no access to Oregon statutes or case law in those facilities." Id. at 609, 243 P.3d 786. We rejected that argument because, under applicable federal regulations (28 CFR section 543.11 ), the petitioner "had the right to solicit legal materials from sources outside federal correctional facilities," and, therefore, "under applicable federal rules, petitioner reasonably could have obtained copies of ORS 137.635 [the pertinent statute] and the [relevant decisional law]." Id . at 611-12, 243 P.3d 786. Although our analysis further implied that the outcome might have been different if the petitioner alleged that he had been denied access through those established administrative channels, our holding did not extend that far. At most, Stahlman suggests that basic assumptions about the availability of published laws and cases might yield in the face of evidence that laws and information presumed to be generally available in accordance with the presumption recognized in Bartz were not, in fact, made available. Here, petitioner's allegations do not permit an inference that the information underlying his claims was not available during the relevant time period; instead, the allegations show that his personal circumstances impeded his access to those materials and, therefore, to his ability to pursue his claim. But, under Fisher and Brown , those personal barriers to pursuing his post-conviction claims-even if they demonstrate that the failure to pursue the claim is reasonably explained by those barriers-do not provide a basis for invoking the escape clause.

Although petitioner suggested below that laws published only in English were not "available" to him, he does not appear to make that argument on appeal. That is, he appears to concede that the laws were available in the sense described by Bartz and subsequent cases.

There appears to be some discrepancy between petitioner's characterization of what the staff person said (requiring him to file "in person") and Mandujano's description of her interaction, which mentions "documents coming from Mexico" that were prepared by petitioner or his attorney. See generally Anderson et al. v. Chambliss et ux. , 199 Or. 400, 409, 262 P.2d 298 (1953) ("[I]t is well settled that if there is any discrepancy between the averments of a pleading and the terms of a writing properly identified or attached to a statement of facts constituting a cause of action or a defense, the language of the exhibit will control in determining its legal effect."). In this case, we need not address that potential discrepancy further because, as we will explain, petitioner has not alleged that any of the relevant contacts occurred before the statute of limitations expired.