Argued and submitted February 17, reversed and remanded September 9, 2021

HECTOR FERNANDO CANALES-ROBLES,
*Petitioner-Appellant,*

*v.*

Garrett LANEY,
Superintendent,
Oregon State Correctional Institution,
*Defendant-Respondent.*

Marion County Circuit Court
16CV21742; A169555

498 P3d 343

Petitioner appeals from a judgment dismissing his post-conviction relief petition as time-barred. Petitioner does not dispute that he filed his post-conviction petition outside of the statutory two-year time limit, but argues that his late filing should be excused under the statutory "escape clause" because he was deprived of all legal materials necessary to file his petition while housed in the custody of the Oregon Youth Authority (OYA). The state argues that defendant had access to the necessary materials and that, even if he did not, the escape clause does not excuse the 23-month delay in filing after petitioner was transferred to an adult facility that did have the necessary materials. *Held*: The trial court erred in dismissing the petition as untimely. The record reflects that petitioner was told that the OYA facility lacked any legal materials and, even though OYA later obtained some legal materials, there is no indication that petitioner was ever informed of the change. Viewed in the light most favorable to petitioner, the record contains a genuine issue of material fact about whether petitioner reasonably could have raised the grounds in his petition. Moreover, although there was a 23-month delay after petitioner was transferred to the adult facility with the necessary materials, the record also contains a genuine issue of material fact about whether the two-year time limit to file was tolled until petitioner arrived at that facility.

Reversed and remanded.

Lindsay R. Partridge, Judge.

Kenneth A. Kreuscher argued the cause and filed the brief for appellant.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Frederick M. Boss, Deputy Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Petitioner appeals from a judgment dismissing his post-conviction relief petition as time barred. ORS 138.510(3). Petitioner does not dispute that he filed his post-conviction petition outside of the statutory two-year time limit, but argues that his late filing should be excused under the statutory "escape clause" because he was deprived of all legal materials while housed in the custody of the Oregon Youth Authority. The trial court granted the state's motion for summary judgment because, assuming that the deprivation of legal materials could excuse a late filing, petitioner waited almost two years after he was transferred to an adult facility before he filed his post-conviction petition. Because there is a factual dispute as to whether petitioner reasonably could have asserted any available grounds for relief within the statute of limitations, we reverse.

## I.  STANDARD OF REVIEW

In post-conviction proceedings, a movant is entitled to summary judgment if, "viewing the evidence in the record in the light most favorable to the opposing party," "the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." *McDonnell v. Premo*, 309 Or App 173, 182-83, 483 P3d 640 (2021) (internal quotation marks omitted). We state the facts in accordance with that standard.

## II.  BACKGROUND

When petitioner was 17 years old, he committed several crimes, including attempted murder, robbery, and assault. Petitioner had not completed high school and had limited proficiency in English, requiring the assistance of an interpreter during his criminal trial. After the jury convicted him, petitioner was placed in the custody of the Oregon Youth Authority (OYA) and housed at MacLaren Youth Correctional Facility.

With the assistance of counsel, petitioner unsuccessfully appealed his conviction. His appellate attorney sent a letter to MacLaren informing petitioner that he had lost his

appeal and that the attorney-client representation was now terminated. The letter further informed petitioner that he had three steps available to him: (1) appeal his conviction to the United States Supreme Court; (2) file a petition for post-conviction relief in state court; (3) file a federal habeas corpus petition. Petitioner spoke to his appellate attorney on the telephone and asked for a packet of information on what he understood to be the first step: appealing to the United States Supreme Court. The attorney advised that he did not have such a packet but would instead provide petitioner with information on how to file a petition for post-conviction relief. Petitioner's attorney then sent petitioner a blank template of a post-conviction relief petition that provided, in its entirety:

> "Petitioner believes that the conviction and imprisonment from the proceedings described above was, and is, illegal. Petitioner was substantially denied his rights in violation of ORS 138.530 as follows."

This text was followed by sections labeled "First Claim for Relief" and "Second Claim for Relief" containing blank lines for petitioner to fill in his claims.

Petitioner asked to use the law library and was informed that "MacLaren does not have a law library." At that time, not only did MacLaren not have a law library, but it also did not have a directory of attorneys, any statutes (including ORS chapter 138, governing post-conviction relief), or any case law (including cases relating to challenges to criminal convictions). About a year and one-half after petitioner's conviction became final, the Oregon Youth Authority adopted a "legal assistance policy" that required offenders to have access to ORS chapter 138, which concerns direct criminal appeals and petitions for post-conviction relief, and a directory of attorneys, although it did not require that a facility provide access to any other statutes, case law, or the United States Constitution. Despite this OYA policy shift, petitioner did not see ORS chapter 138 or the attorney directory at MacLaren, and the record does not indicate that the youth there were made aware of the change in policy.

In August 2014, over four years after his conviction became final, petitioner was transferred to the custody of

the Oregon Department of Corrections, where he had access to legal materials. Approximately 23 months later, in July 2016, petitioner filed the instant petition for post-conviction relief. In response, the superintendent moved for summary judgment, arguing that the petition was time-barred because it was filed over six years after petitioner's conviction became final, well beyond the two-year limit provided in ORS 138.510(3). Petitioner opposed the motion, arguing that the lack of legal materials at MacLaren meant that his claims "could not reasonably have been raised" during that time period, thus qualifying him for a statutory exception to the statute of limitations. *See* ORS 138.510(3). The trial court granted the superintendent's motion for summary judgement:

> "[L]ooking at the facts most favorable to the petitioner is I do have someone that at the time of conviction was 17, it would appear that had limited English skills.
>
> "* * * * *
>
> "I would also take it that at MacLaren that there were legal materials—or a lack of legal materials * * *[.]
>
> "* * * * *
>
> "My concern about this, though, is if part of the reasonableness equation involves the fact that for a significant period at the beginning of the incarceration * * * we have is him being [at an adult prison] for 23 months without filing something.
>
> "And despite the fact that I am concerned about his age and English skills and access to materials while at MacLaren, it seems to me that waiting 23 months after you get to [prison] to file a petition does not come within the term of reasonableness.
>
> "Now, I'm not saying that had he filed this on August 2nd, 2014, that would be too late. But certainly there is a period there where it's no longer reasonable to wait and file the petition or not initiate the petition.
>
> "So given the fact that there's 23 months after he's [transferred] from MacLaren and he had been advised by [his appellate attorney] that he had this post-conviction process available to him well before that date, I can't find that it would be reasonable to wait till July 1st, 2016, in order to file the petition."

On appeal, petitioner does not dispute that he filed his petition more than two years after the date his criminal conviction became final. He contends, however, that until he was transferred to the Oregon Department of Corrections, he did not have access to any legal materials and therefore could not reasonably have raised the claims in his petition. Because he filed the petition within two years of the transfer, petitioner argues the filing was timely under the statutory "escape clause." The state responds that petitioner was on notice of any available grounds for relief because he was present at his criminal trial and his appellate attorney informed him of the possibility of filing for post-conviction relief. The state further contends that, even if the petitioner could not have raised his claims while he was housed at MacLaren, he could have raised them sooner than nearly two years after his transfer.

## III.   ANALYSIS

To resolve this dispute, we must first determine whether a complete lack of access to legal materials renders post-conviction grounds for relief unavailable for purposes of the statutory escape clause. If we conclude that the petition qualifies for the escape clause, we must then determine whether the petition was untimely filed as a matter of law on the record before us.

### A.   *Triggering the Escape Clause*

ORS 138.510(3) provides:

> "A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the [date that the conviction became final], unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition."

The second part of the sentence is known as the "escape clause," allowing petitioners to escape the consequences of an untimely filing if the claims for relief could not reasonably have been raised within the statute of limitations.

Generally, the escape clause allows for the filing of an untimely petition in two circumstances: (1) "the applicable law is established within the two-year limitation period, and the question is whether the petitioner reasonably could

have asserted that available legal ground for relief" or (2) "a new constitutional rule is announced after the two-year limitation period expired, and the question is whether that 'new rule' reasonably could have been raised within the limitations period." *Chavez v. State of Oregon*, 364 Or 654, 658, 438 P3d 381 (2019). In either case, "the *availability* of information forming the grounds for post-conviction relief is the statute's focus." *Fisher v. Belleque*, 237 Or App 405, 409, 240 P3d 745 (2010), *rev den*, 349 Or 601 (2011) (emphasis added). The escape clause "is meant to be construed narrowly" and is limited to only those claims based on information—either facts or law—that was not reasonably available. *Bartz v. State of Oregon*, 314 Or 353, 359, 839 P2d 217 (1992); *but see Gutale v. State of Oregon*, 364 Or 502, 514, 435 P3d 728 (2019) (observing that *Bartz* did not "define just how narrowly to construe the escape clause").

This case involves the first type of escape clause claim—that factual circumstances allegedly prevented a petitioner from bringing a claim. In *Bartz*, the seminal case on the first type of escape clause claim, the petitioner argued that his attorney's failure to inform him of a statutory defense rendered it reasonable that he did not learn of that ground for relief during the limitations period. 314 Or at 356-57. The Oregon Supreme Court rejected that argument because, the publication of a statute by the legislature is usually sufficient to make it "reasonably available" as a ground for relief to a post-conviction petitioner. *Id.* at 359-60; *see also Perez-Rodriguez v. State of Oregon*, 364 Or 489, 496, 435 P3d 746 (2019) ("[T]he public nature of the law made the legal basis for the petitioner's claim in *Bartz* reasonably available to him."). Despite petitioner's personal lack of knowledge of its existence, the ground for relief was reasonably available because, "it is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments is sufficient to inform persons of statutes that are relevant to them." *Bartz*, 314 Or at 369.

We have never confronted a case that successfully undermined the basic presumption that a post-conviction petitioner has access to statutes that are generally available to the public. In *Stahlman v. Mills*, a petitioner who was

incarcerated in a federal correctional institution outside Oregon alleged that those facilities did not contain Oregon statutes or case law. 238 Or App 606, 609-10, 243 P3d 786 (2010), *rev den*, 349 Or 654 (2011). Because the applicable federal and Oregon regulations provided the petitioner the ability to obtain the relevant statutes and case law, however, we concluded any grounds for relief were reasonably available to him. *Id*. at 611-13. Our focus in *Stahlman* on the actual availability of the legal materials "implied that the outcome might have been different if the petitioner alleged that he had been denied access through those established administrative channels." *Hernandez-Zurita v. State of Oregon*, 290 Or App 621, 631 n 1, 417 P3d 548 (2018), *vac'd*, 365 Or 194, 451 P3d 236 (2019) (citing *Stahlman*, 238 Or App at 612).[1] We left open the possibility "that basic assumptions about the availability of published laws and cases might yield in the face of evidence that laws and information presumed to be generally available in accordance with the presumption recognized in *Bartz* were not, in fact, made available." *Hernandez-Zurita*, 290 Or App at 631 n 1.

This case presents that scenario. It is undisputed that, during some or all of the statute of limitations, petitioner was in state custody, incarcerated in a facility that did not contain any legal materials. Unlike the general public, petitioner was denied access to Oregon statutes. This lack of availability was a condition shared by all persons housed at MacLaren at that time and a deprivation caused by the state. Unlike in *Stahlman*, this record is devoid of any evidence of a mechanism for petitioner to obtain the necessary materials to file a post-conviction petition. And also unlike the petitioner in *Stahlman*, petitioner affirmatively requested use of a law library and was told that the facility lacked any legal materials.[2]

_____

[1] Although we recognize that, in *Hernandez-Zurita v. State of Oregon*, 365 Or 194, 451 P3d 236 (2019), the Supreme Court vacated our decision for reconsideration in light of *Gutale v. State of Oregon*, 364 Or 502, 435 P3d 728 (2019), and *Perez-Rodriguez*, 364 Or at 489, after which the case was jointly dismissed by the parties, we discuss it as persuasive authority. *See State v. Sassarini*, 300 Or App 106, 125 n 1, 452 P3d 457 (2019) (looking to prior vacated decision insofar as it is "helpful").

[2] The state points out that the Oregon Youth Authority eventually implemented a policy that all facilities must have ORS chapter 138 and a directory of attorneys, apparently suggesting that those limited materials would be sufficient

The state argues that petitioner's attorney put petitioner on notice of the availability of post-conviction relief and provided him with a blank form petition. Contrary to the state's position, however, the question is not whether petitioner was aware of the availability of post-conviction relief, it is whether the grounds for relief contained in that petition were reasonably available to him. *See White v. Premo (S065188)*, 365 Or 1, 6, 443 P3d 597 (2019), *cert dismissed*, ___ US ___, 140 S Ct 993, 206 L Ed 389 (2020) ("[A]s used in the escape clauses * * *, the term 'grounds' means the legal rule asserted as a basis for a claim, not the general nature of the claim."). The only information contained in the blank form was a citation to ORS chapter 138, a statute that petitioner did not have. Although petitioner possessed a blank form, he had no access to anything to fill in those blanks, including any information on what grounds for relief were even available in a post-conviction proceeding, let alone which grounds applied to him. Although petitioner would have been on notice of the events that occurred at his criminal trial, and the need to file for post-conviction relief, taking the facts in the light most favorable to petitioner, there is a dispute of fact as to whether he was deprived of the opportunity to determine what grounds of relief were available to him.

### B. *Impact of the Escape Clause on the Statute of Limitations*

That petitioner has qualified for the escape clause does not end the inquiry. We still must determine whether the petition was timely given that petitioner did not file until 23 months after he was transferred from MacLaren. The trial court concluded that, even assuming petitioner's time at MacLaren triggered the escape clause, it was unreasonable for him to wait nearly two years after his transfer to file the petition. Petitioner argues that the statute does not contain a "reasonableness" requirement, but rather functions

---

to file a post-conviction petition. However, the undisputed facts demonstrate that MacLaren did not have any materials for years and nothing in the record indicates that the acquisition of ORS chapter 138, if it occurred, was publicized or otherwise made available to the MacLaren population. Indeed, petitioner testified that he was not aware of the addition of any legal materials. On this record, in the light most favorable to petitioner, it is disputed that these materials were available to the offenders at MacLaren.

like a discovery rule, that is, that the statute of limitations did not start to run at all until he was transferred to adult custody and he was able to discover the available grounds for relief. The state does not appear to defend the trial court's rationale, but rather responds that the statute explicitly provides that petitioner's claims run from the date his conviction became final, and no discovery rule applies.

In order to resolve this dispute, we must construe ORS 138.510 "examining the text and context of [the statute], with the goal of determining legislative intent." *Schaefer v. Oregon Aviation Board*, 312 Or App 316, 332, 495 P3d 1267, *adh'd to as modified on recons*, 313 Or App 725, 492 P3d 782 (2021) (quoting *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009)). Again, the text of ORS 138.510(3) provides that a petition "must be filed within two years of the [date a conviction becomes final], unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition."

By its use of the word "unless," the statute creates an exception to the requirement that all post-conviction petitions must be filed within two years of the date of conviction. *See State v. He Quan Chan*, 113 Or 168, 172-73, 232 P 619 (1925) (stating that the word "unless," has "the same legal effect" as "except"). That exception encompasses any "ground[] for relief asserted which could not reasonably have been raised." *See* ORS 138.510(3). Thus, based on the plain text of the statute, the two-year statute of limitations does not run against grounds that could not reasonably have been raised. Put another way, the statute of limitations is tolled during the time period that a claim could not reasonably be raised. *See State v. Ashcroft*, 260 Or App 1, 3 n 1, 316 P3d 355 (2013), *rev den*, 355 Or 380 (2014) (observing the definition of "toll" as "(Of a time period, esp. a statutory one) to stop the running of; to abate <toll the limitations period>" (quoting *Black's Law Dictionary* 1625 (9th ed 2009))). Accordingly, in the event that a new claim becomes available, and that claim qualifies for the escape clause, the period of time that the claim was unavailable does not count against the statute of limitations.

As the Supreme Court has recognized, that "standard is very similar to the standard for a discovery rule." *Gutale*, 364 Or at 512. The discovery rule is "a rule of interpretation of statutes of limitation that has the effect of tolling the commencement of such statutes under certain circumstances." *Rice v. Rabb*, 354 Or 721, 725, 320 P3d 554 (2014). For purposes of the escape clause, the circumstance tolling the commencement of the statute of limitations is the unavailability of a ground for relief. The statute of limitations does not commence until that ground of relief becomes available, if it ever does. *See Gutale*, 364 Or at 512 (comparing the escape clause to the discovery rule in a negligence cause where "the statute of limitations does not begin" until the injury is or should have been discovered). As relevant to petitioner, the statute of limitations did not begin to run until he was transferred to an adult facility and gained access to the legal materials that made the grounds for relief available to him.

The state does not provide a different textual interpretation, but rather argues that the plain text of the portion of the statute that does not contain the escape clause is unambiguous that the triggering date of the statute of limitations is the finality of the criminal conviction. However, as described above, the unambiguous plain language of the escape clause undermines the state's argument. A petition must be filed within two years of the finality of the criminal conviction "*unless* the court * * * finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition." ORS 138.510(3) (emphasis added). In that circumstance, the triggering date is not the finality of the conviction but the point at which the grounds *could* be reasonably raised.

The state's reliance on *Benitez-Chacon v. State of Oregon*, 178 Or App 352, 37 P3d 1035 (2001), *rev den*, 334 Or 76 (2012), as explicitly rejecting the applicability of a discovery rule to ORS 138.510 is misplaced. There, the petitioner argued that her attorney failed to make her aware of information contained in publicly available statutes. *Id.* at 354. Relying on *Bartz* and *Brown*, we concluded that the public nature of those statutes meant that the grounds for relief

were "reasonably available" to petitioner and she therefore did *not* qualify for the escape clause. *Id.* at 357. Petitioner attempted to circumvent the availability of her claim for relief by making a similar argument to the petitioner in *Bartz*: that the statute should not begin to run at all until she was aware of her injury, that is, the legal basis for her ineffective assistance claim. *Benitez-Chacon*, 178 Or App at 357. We rejected that argument, observing that the statute "could not be more plain" in providing that the statute of limitations runs from the date a judgment becomes final, not the discovery of an injury. *Id.* at 358.

What we did not do in *Benitez-Chacon* is address the *exception* to that rule: when the statute of limitations is tolled for purposes of the escape clause. Indeed, we recognized as much in *Benitez-Chacon*, observing that the escape clause "encompass[es] a form of a 'discovery rule'" by allowing a late petition on grounds that could not reasonably have been raised. *Id.* at 359. That "form of discovery rule" encompassed by the escape clause did not help petitioner there because she did not qualify for the escape clause in the first place, not because the statute of limitations runs against unavailable claims. *Id.* at 359.

On this record, in the light most favorable to petitioner, there is a genuine dispute of fact over whether the grounds for relief were not reasonably available to him—thus tolling the statute of limitations—during the time that he was deprived of all legal materials. If that time is removed from the calculation, petitioner filed his petition within the two-year statute of limitations.

Reversed and remanded.