Argued and submitted December 18, 2020, affirmed October 27, 2021, petition for review allowed April 21, 2022 (369 Or 675)
See later issue Oregon Reports

MATTHEW DANIEL INGLE,
*Petitioner-Appellant,*

*v.*

Dolores MATTEUCCI,
Superintendent, Oregon State Hospital,
*Defendant-Respondent.*

Marion County Circuit Court
18CV09971; A170009

501 P3d 23

On appeal from a judgment denying post-conviction relief, petitioner argues that the post-conviction court erred in dismissing his petition as untimely. Petitioner acknowledges that he filed his petition over eight years after the two-year statute of limitations in ORS 138.510(3) would normally start running. He contends that there is a triable issue as to whether the escape clause applies, however, because his personal mental health circumstances were such that he could not reasonably have raised his post-conviction claim during the limitations period. In support of that argument, petitioner contends that the Supreme Court implicitly overruled *Fisher v. Belleque*, 237 Or App 405, 240 P3d 745, *rev den*, 349 Or 601 (2011), in *Gutale v. State*, 364 Or 502, 519, 435 P3d 728 (2019). *Held*: The post-conviction court did not err in dismissing the petition as untimely. Under *Fisher*, the court correctly declined to consider petitioner's personal characteristics in determining whether there was a triable issue. *Gutale* did not implicitly overrule *Fisher*.

Affirmed.

Lindsay R. Partridge, Judge.

Lindsey Burrows argued the cause for appellant. Also on the opening brief were Bruce A. Myers, Certified Law Student, and O'Connor Weber LLC. Also on the reply brief was O'Connor Weber LLC.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen R. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

Tookey, J., dissenting.

**AOYAGI, J.**

On appeal from a judgment denying post-conviction relief, petitioner argues that the post-conviction court erred in dismissing his petition as untimely. Petitioner acknowledges that he filed his petition over eight years after the two-year statute of limitations in ORS 138.510(3) would normally start running. He contends that it was nevertheless error to dismiss the petition, because his allegations were sufficient to raise a triable issue regarding the escape clause. Specifically, petitioner contends that his personal mental health circumstances during those eight years (as described in the petition)—which included his suffering from schizophrenia and taking psychotropic medications—were such that he could not reasonably be expected to pursue a post-conviction claim any earlier than he did. Or, to use the statutory language, petitioner contends that his claim for relief "could not reasonably have been raised" within two years of the date that the judgment of conviction was entered, ORS 138.510(3), due to his personal mental health circumstances.

In so arguing, petitioner squarely raises the question whether a post-conviction court must consider a petitioner's individual mental health circumstances—something unique to the petitioner—in applying the escape clause in ORS 138.510(3). That is fundamentally a question of statutory construction, *i.e.*, the enacting legislature's intent. The Supreme Court recently left this very question open in *Perez-Rodriguez v. State of Oregon*, 364 Or 489, 498-99, 435 P3d 746 (2019), recognizing that it is "not an easy" question, and resolving the case before it on other grounds.

In this case, we conclude that, although the Supreme Court has yet to finally resolve the matter, we are bound by our controlling precedent, *Fisher v. Belleque*, 237 Or App 405, 240 P3d 745, *rev den*, 349 Or 601 (2011). Petitioner contends that the Supreme Court implicitly overruled *Fisher* in *Gutale v. State of Oregon*, 364 Or 502, 519, 435 P3d 728 (2019), a case decided on the same day as *Perez-Rodriguez*, but we are not persuaded that that is so. In our view, while the issue remains open in the Supreme Court, *Fisher* is controlling precedent in our court and remains good law until the Supreme Court decides otherwise. Petitioner has not

asked us to overrule our own precedent, under the "rigorous" standard articulated in *State v. Civil*, 283 Or App 395, 417, 388 P3d 1185 (2017), nor are we inclined to do so *sua sponte* based on the arguments that have been made. That is, we are not convinced that the holding in *Fisher* is "plainly wrong." *Id*. We are also cognizant that "[s]*tare decisis* is at its zenith in the area of statutory construction." *State v. Merrill*, 303 Or App 107, 119, 463 P3d 540 (2020), *adh'd to as modified on recons*, 309 Or App 68, 481 P3d 441, *rev den*, 368 Or 402 (2021).

For those reasons, as described in more detail below, we affirm.

## STANDARD OF REVIEW

When a post-conviction court dismisses a petition as untimely on its face, as permitted by ORCP 21 A(9), we review for legal error. *Zsarko v. Angelozzi*, 281 Or App 506, 508, 385 P3d 1239 (2016), *rev den*, 361 Or 312 (2017). Our review is limited to the face of the petition. *Id.* Like the post-conviction court, we must "assume the truth of all allegations in the petition and give petitioner, as the nonmoving party, the benefit of all favorable inferences that could be drawn from those allegations." *Id*.

## FACTS

Consistent with the standard of review, we "draw the facts from the petition, supplementing them with the pertinent procedural facts." *Id*.

In 2009, petitioner killed two people when he ran a red light while driving. Petitioner was charged with second-degree manslaughter and driving under the influence of intoxicants. He waived a jury trial, proceeded with a stipulated-facts trial, and was found guilty except for insanity (GEI) on both counts. Petitioner was placed under the jurisdiction of the Psychiatric Security Review Board and committed to the Oregon State Hospital for an indefinite period not to exceed 20 years. The judgment was entered on November 10, 2009. Petitioner did not appeal.

Over eight years later, on March 14, 2018, petitioner filed a petition for post-conviction relief, which he

subsequently amended. In the operative petition, petitioner claims that he received ineffective and inadequate assistance of counsel at trial. He alleges that his trial counsel "knew or should have known" before trial that petitioner was "confused" and "unable to meaningfully track and understand conversations" due to "extremely powerful psychotropic medications" that "petitioner was provided with, and encouraged to take, in an attempt to treat his diagnosed schizophrenia." Petitioner alleges that his trial counsel nonetheless "attempted to explain the concept of the defense of [GEI] and the benefits and full consequences of that defense," which petitioner could not "fully appreciate" because of his mental condition and medicated state.

According to petitioner, his trial counsel "failed to ensure petitioner had a full understanding of what it meant to be found [GEI] before encouraging him to waive his right to a jury trial in pursuit of that outcome," whereas trial counsel exercising reasonable professional skill and judgment would have realized the likely effect of petitioner's medications, "reiterated the concept" of GEI on a level that petitioner could understand, and ensured that petitioner could "parrot the basics" of GEI back to counsel, including its consequences. Petitioner alleges that, as a result of trial counsel's errors and omissions, he did not understand the consequences of being found GEI, including that he would "likely" spend 20 years at the Oregon State Hospital. Petitioner alleges that, had he "fully comprehended" the consequences of a GEI finding, he would have insisted on a jury trial, instead of agreeing to a stipulated-facts trial.

As for the timing of his petition, petitioner acknowledges that, under ORS 138.510(3)(a), his petition normally would have had to been filed by November 10, 2011, two years after the date of entry of the judgment of conviction. Petitioner alleges that the escape clause applies, however, because, "[b]etween November 10, 2009 and November 10, 2011 (limitations period), petitioner was intellectually disabled as a result of his diagnosed schizophrenia and his forced consumption of extremely powerful psychotropic medications." Petitioner alleges that, during that two-year period, his "mental disease and consumption of prescribed medications *** substantially impaired his ability

to concentrate, to reason, to understand the legal remedies available to challenge his convictions, and to understand the legal proceedings that resulted in his imposed sentence." He further alleges that his "mental disease substantially impaired his ability to read and comprehend legal documents related to those proceedings and deprived him of the ability to appreciate, identify, allege, and support with the requisite evidence the claim for relief alleged" in his petition.[1] As a result, he asserts, "the information required to timely raise the grounds for relief alleged [in the petition] was not reasonably available to petitioner during the two-year period following entry of his judgment of convictions."

The superintendent moved to dismiss the petition as untimely under the statute of limitations in ORS 138.510(3). *See* ORCP 21 A(9) (allowing a party to move to dismiss a claim, before filing an answer, on the ground "that the pleading shows that the action has not been commenced within the time limited by statute").

The post-conviction court granted the superintendent's motion and dismissed the petition. In doing so, the court concluded that the allegations in the complaint, taken as true, were insufficient to trigger the escape clause. The court explained that it believed that existing Court of Appeals precedent required that result:

"The problem in your case is that my reading of what the courts that are above me tell me is that *** just because you have a mental illness and that mental illness prevents you from being able to access the legal process, that doesn't allow me to apply the exception. *** And the

---

[1] The petition references an attached declaration by petitioner. *See BoardMaster Corp. v. Jackson County*, 224 Or App 533, 535, 198 P3d 454 (2008) (allowing consideration of exhibits attached to a pleading and incorporated therein, when reviewing a dismissal on the pleadings). The declaration is consistent with the petition. For example, in his declaration, petitioner attests that, at the time of the car crash, he had been diagnosed with schizophrenia and had recently begun taking "very powerful psychotropic medications"; that he "remained heavily medicated for years to come; and that from November 10, 2009 (when he was convicted) until March 14, 2018 (when he filed his original post-conviction petition), he was unable to adequately concentrate on a single subject, to logically reason and understand legal remedies available to him, and to understand the legal proceedings that resulted in his convictions.

difficulty I'm having in your case is that the caselaw that is above me I don't think allows me to let the case go forward. Although one of my concerns is that there is an allegation of forced medication. But then I'm also hearing from you today that for a period of time you felt just fine. You weren't taking your medication. And for a period of time you felt like you were sufficient enough you could leave the State Hospital. So that kind of counteracts the argument that you would've been unable during that period of time to file a post-conviction petition. So it's my judgment that under the law that I [have] to grant the State's motion to dismiss.

"Now, you will have an opportunity to have my decision challenged and reviewed by the Court of Appeals. And I hope you do because there are some concerns I have about some of the decisions. The cases that I believe that [your counsel] has cited really deal with situations where someone in the legal system misinformed the petitioner or somehow made a mistake that *** prevented the post-conviction case from going forward. That's really not what the situation is here. My judgment is that the cases that I read from the Court of Appeals that deal with mental health issues are [deciding] that mental health issue is not a reason to allow an exception to the statute of limitations; the two-year statute of limitations.

"And so I really find that the circumstances are much more similar here to *Fisher*[, 237 Or App at 405,] and *Colon-Lebron* [*v. Taylor*, 290 Or App 708, 416 P3d 331, *rev den*, 363 Or 390 (2018),] than they are to *Winstead* [*v. State of Oregon*, 287 Or App 737, 403 P3d 444 (2017),] or *Terrance* (phonetic) or—I know there's a third case—that were cited. And so ultimately, you'll have an opportunity to have the Court of Appeals review my decision and see whether or not they agree with me. So that's going to be my decision today."

Petitioner appeals. He argues that the allegations in his petition are sufficient to raise a triable issue regarding the escape clause in ORS 138.510(3), precluding dismissal on the pleadings. The superintendent disagrees, countering that, under *Fisher*, 237 Or App at 405, a post-conviction court may not apply the escape clause in ORS 138.510(3) based on a petitioner's intellectual disability or diminished mental capacity having interfered with his ability to file a timely petition. In his reply brief, petitioner asserts that *Gutale* implicitly overruled *Fisher*.

## ANALYSIS

Under ORS 138.510(3), a petition for post-conviction relief must be filed within two years of the entry of the judgment of conviction (or, if applicable, the exhaustion of any appeals[2]), unless the court "finds grounds for relief asserted which could not reasonably have been raised" within the two-year limitations period. The stated exception is commonly called the "escape clause," and its purpose "is to give persons extra time to file petitions for post-conviction relief in extraordinary circumstances." *Bartz v. State of Oregon*, 314 Or 353, 358-59, 839 P2d 217 (1992).[3]

For 30 years, *Bartz* has instructed us to construe the escape clause "narrowly," *id.* at 359, although, as the Supreme Court recently noted, *Bartz* did not "attempt to identify the boundaries of what counts as extraordinary or to define just how narrowly to construe the escape clause." *Gutale*, 364 Or at 514. We and the Supreme Court have endeavored to define those boundaries for three decades by deciding the post-conviction cases that come before us. In the process, it has been established that "extraordinary circumstances" that may trigger the escape clause in ORS 138.510(3) (or the identical escape clause for successive petitions in ORS 138.550(3)) include newly discovered facts that were not reasonably available during the statutory period[4] and changes to the law that were not reasonably foreseeable during the statutory period.[5] Recently, we held that state-

---

[2] If an appeal is taken from the judgment of conviction, the statute starts running as provided in ORS 138.510(3)(b)-(c).

[3] On its face, ORS 138.510(3)'s escape clause applies when "the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition." However, the Supreme Court has construed that language to encompass situations involving the late filing of an original petition. *Bartz*, 314 Or at 357-58 (holding, after analyzing the "ambiguous" statutory language, that the exception in ORS 138.510(3) (previously numbered ORS 158.510(2)) "does not require the filing of a timely 'original or amended' petition as a prerequisite to the filing of an untimely petition").

[4] *See Verduzco v. State of Oregon*, 357 Or 553, 566, 355 P3d 902 (2015) (a petitioner who alleges "that they could not reasonably have raised a ground for relief earlier because those grounds depended on newly discovered facts" must persuade the post-conviction court "that the facts on which their new grounds for relief depended could not reasonably have been discovered sooner"); *Gutale*, 364 Or at 511 (quoting *Verduzco* for same point).

[5] *See Verduzco*, 357 Or at 571 (a petitioner who alleges that they could not reasonably have raised a ground for relief earlier because it depended on a change in

caused deprivation of access to legal materials during the statutory period may also trigger the escape clause.[6]

What is also established—or at least has been established up until this point—is that a petitioner's unique personal characteristics are *not* relevant to the escape clause. Because of the phrasing of the escape clause, the fundamental question is "whether the petitioner reasonably could have raised [the asserted] grounds for relief earlier, a question that calls for a judgment about what was 'reasonable' under the circumstances." *Verduzco v. State of Oregon*, 357 Or 553, 566, 355 P3d 902 (2015). In making that judgment call, existing precedent has always focused on *any* reasonable person in the petitioner's situation—or the petitioner's counsel's situation, if the petitioner was represented during the relevant time—without consideration of the petitioner's unique personal characteristics.

This case involves petitioner's mental health, or, as he describes it, an "intellectual disability," which is a type of personal characteristic unique to petitioner. In *Fisher*, we held that a petitioner's diminished capacity due to mental disorders was not relevant to the escape clause in ORS 138.510(3) and affirmed the dismissal of his petition as untimely. 237 Or App at 407. Much like petitioner in this case, the petitioner in *Fisher* waited nine years to file a post-conviction petition alleging inadequate assistance of counsel. *Id*. When he finally filed, he argued that he came within the escape clause because his mental health conditions during the statutory period—specifically, clinical depression, dysthymic disorder, and post-traumatic stress disorder—had prevented him from filing a timely petition. *Id*. at 408. Importantly, he did not allege only that he *had* mental health conditions; he expressly alleged that they had

---

the law must establish that the issue could not reasonably have been "anticipated and raised" in the statutory period; whether a claim "reasonably could have been raised earlier will vary with the facts and circumstances of each claim," including whether the change in the law involved "settled" principles or "novel" ones).

[6] *See Canales-Robles v. Laney*, 314 Or App 413, 419-20, 498 P3d 343 (2021) (reversing the dismissal of petition as untimely, where the petitioner was incarcerated in a state facility that lacked legal materials, thus denying him access to the Oregon statutes, unlike the general public; "This lack of availability was a condition shared by all juveniles housed at MacLaren at that time and a deprivation caused by the state.").

interfered with his ability to file a timely petition. *Id.* On summary judgment, the post-conviction court dismissed his claims as untimely, "explaining that 'ORS 138.510(3) does not set forth mental disease or defect as a ground for tolling the limitations period.'" *Id.* (quoting post-conviction court).

On appeal, the petitioner in *Fisher* again contended that, "as a result of his mental illness, he could not reasonably have raised [his claims] in a timely manner." *Id.* After considering the text and context of the statute and existing precedent, we affirmed. Of particular note, we pointed to the legislature's enactment of "a statute that tolls specified statutes of limitation because of an individual's mental or legal incapacity," ORS 12.160, which "does not apply to actions subject to the two-year limitation period of ORS 138.510(3)." *Id.* at 409. We also surveyed existing case law, observing that "judicial construction of ORS 138.510(3) has emphasized that the availability of information forming the grounds for post-conviction relief is the statute's focus." *Id.* In each precedent that we discussed, there was no consideration of the personal characteristics of the petitioner. *See id.* at 409-10. Ultimately, we concluded as a matter of statutory construction that the petitioner's assertion—that, "although the information [relevant to his claim] existed and was available, his failure to act on it was reasonable in light of his mental condition"—was "simply not enough to trigger the escape clause." *Id.* at 411.

*Fisher* is directly on point.[7] So is *Colon-Lebron v. Taylor*, 290 Or App 708, 709, 416 P3d 331 (2018), in which we

---

[7] The dissent seeks to distinguish *Fisher* based on a statement in *Fisher* that there was "no contention that any of the grounds for relief alleged in the petition is based on information that did not exist or that was not reasonably available to petitioner within the two years following the entry of the appellate judgment." *Fisher*, 237 Or App at 411; *see* 315 Or App at 453 (Tookey, J., dissenting) (citing same). In context, it is apparent that we did not mean that the "reasonably available" standard was not at issue. To the contrary, the petitioner's argument in *Fisher* was that the information relevant to his claim existed in the world and was reasonably available to him insofar as there was no external impediment to his accessing it, but that his own "mental illness rendered him incapable of appreciating the significance of the information that was plainly available." *Id.* at 410-11. "In other words, petitioner contend[ed] that, although the information existed and was available, his failure to act on it was reasonable in light of his mental condition." *Id.* at 411. The substance of the petitioner's argument in *Fisher* was the same as petitioner's argument in this case.

affirmed the dismissal of a petition for post-conviction relief as untimely under ORS 138.510(3), where the petitioner argued "that he suffers from mental disabilities that prevent him from making timely decisions, including whether to file a post-conviction petition," because that argument was "foreclosed by our decision in *Fisher*." We described *Fisher* as "holding that the petitioner's mental illness, which rendered him incapable of appreciating the significance of publicly available information, was not sufficient to trigger the escape clause of ORS 138.510(3)." *Id*.

Under controlling precedent, we therefore must affirm the post-conviction court's dismissal of the petition in this case—unless, of course, petitioner is correct that *Gutale* implicitly overruled *Fisher*. Upon consideration, we are unpersuaded that it did.

The Supreme Court recently decided two post-conviction cases on the same day: *Gutale* and *Perez-Rodriguez*. In *Gutale*, the petitioner pleaded guilty to a Class A misdemeanor and, years later, learned—when deportation proceedings were instituted against him—that there were potential immigration consequences to his plea. 364 Or at 504. The petitioner had told the court at sentencing that he was pleading guilty in part because he wanted to obtain United States citizenship. *Id*. Yet neither his trial counsel nor the trial court informed him that his conviction could have immigration consequences. *Id*. Under *Padilla v. Kentucky*, 559 US 356, 369, 130 S Ct 1473, 176 L Ed 2d 284 (2010), trial counsel was obligated to advise him at least of the risk of adverse immigration consequences, and, under ORS 135.385(2), the trial court also was required to inform him that a criminal conviction could result in deportation or other immigration consequences. *Gutale*, 364 Or at 505. The petitioner alleged that, because of the omissions of his trial counsel and the sentencing court, "he did not know that his conviction could affect his immigration status and that he remained unaware of that fact until he was detained by ICE after the limitations period expired." *Id*. at 520.

In that context, the Supreme Court explained that, under existing case law, whether a claim for post-conviction relief could not reasonably have been raised earlier turns

not only on whether "a petitioner could have found the law if he or she had looked" (in that it was publicly available) but also whether "there was a reason for the petitioner to look for it." *Id*. at 511. Analogizing to the "should have known" standard for civil discovery rules, the court concluded that the petitioner's allegations raised a triable issue as to whether a reasonable person in the petitioner's situation would have had reason to look into the law regarding potential immigration consequences. *Id*. at 512-13. It was therefore error for the post-conviction court to dismiss the petition as untimely on its face. *Id*. at 520 (recognizing the possibility that "the factual record will ultimately reveal that petitioner had information about the immigration consequences of his conviction sooner," but concluding that his allegations, taken as true, created a triable issue).

In reaching that conclusion, the court emphasized that the petitioner in *Gutale* had been unrepresented while the statute of limitations was running. *Id*. at 519. Because of the realities of when court-appointed counsel is available, post-conviction petitioners filing successive petitions are likely to have been represented by counsel at a time when their new claims potentially could have been raised, which is why case law regarding the escape clause in ORS 138.550(3) typically focuses on counsel. *See* ORS 138.550(3) (generally barring successive petitions, subject to an escape clause identical to that in ORS 138.510(3)); *Perez v. Cain*, 367 Or 96, 113, 473 P3d 540 (2020) ("Under ORS 138.550(3), * * * we analyze whether a claim reasonably could have been raised from counsel's perspective; petitioner's age and other personal characteristics have no role in the analysis."). By contrast, petitioners filing an original petition frequently will have lacked legal representation during the statutory period, such that the focus is on the petitioner. *Perez*, 367 Or at 113. That was relevant in *Gutale*, because, "[a]lthough counsel may be responsible for knowing that there may be immigration consequences to a criminal conviction, we do not presume that to be the case for an individual petitioner, unless there is a factual basis for concluding that the petitioner knew that there may be immigration consequences to his or her conviction." 364 Or at 519. No such factual basis existed in *Gutale*. *Id*. at 520.

On the same day that the Supreme Court decided *Gutale*, it also decided *Perez-Rodriguez*. In *Perez-Rodriguez*, the Supreme Court expressly left open the question "whether a petitioner's mental illness and intellectual disability may ever justify applying the escape clause" in ORS 138.510(3). 364 Or at 498. The court did not need to resolve that threshold question because it concluded that, even if the answer was affirmative, the petitioner's allegations would not create a triable issue regarding the escape clause. *Id.* at 499 ("We do not need to resolve that question in this case, because, even if a petitioner's mental illness and intellectual disability *could* justify applying the escape clause, petitioner's specific allegations here would not justify applying the escape clause in this case." (Emphasis in original.)). The court explained why it was "hesitant to definitively resolve" the threshold question, which essentially reduced to the question being "not an easy one" (for reasons described in some detail) and to the parties' arguments being "significantly underdeveloped" and largely repetitive of the arguments made in *Gutale*, "even though these cases are factually distinct." *Id.* at 498-99.

We are unpersuaded that *Gutale* implicitly overruled *Fisher*. As a preliminary matter, the fact that the Supreme Court expressly left open in *Perez-Rodriguez* the exact question presented in this case makes it clear that the Supreme Court has not actually *decided* the issue before us, in *Gutale* or otherwise. As for whether the reasoning of *Gutale* undermines *Fisher*, we note that there is one piece of our statutory construction in *Fisher* that the Supreme Court has rejected. In a footnote in *Gutale*, the Supreme Court rebuffed an argument that the state likely drew from *Fisher* (although *Fisher* is not mentioned). Specifically, the court rejected the state's suggestion that the legislature's use of the passive voice in ORS 138.510(3) rendered "the actor inconsequential to [the] analysis," concluding that, in context, "it is the petitioner who reasonably must have raised the grounds." *Gutale*, 364 Or at 519 n 6; *see Fisher*, 237 Or App at 409 (relying in part on the legislature's use of passive voice in analyzing ORS 138.510(3)). Accordingly, that one piece of our statutory analysis in *Fisher* is no longer viable. However, we do not view that as undermining *Fisher* to the point that its holding is no longer good law. The rejected piece of the analysis

is not so central to the conclusion as to cause it to fall apart without it. *See Fisher*, 237 Or App at 409.

Further, that is not the aspect of *Gutale* on which petitioner focuses. Petitioner focuses instead on *Gutale*'s reference to a petitioner's "situation." As previously mentioned, *Gutale* frames the relevant inquiry as being whether "the petitioner reasonably could have accessed the ground for relief and whether a reasonable person *in the petitioner's situation* would have thought to investigate the existence of that ground for relief." 364 Or at 512 (emphasis added). That statement makes perfect sense in the context of *Gutale*. However, we disagree with petitioner's suggestion that a petitioner's "situation" is synonymous with a petitioner's *personal characteristics*, including mental health conditions. Not only does the court's same-day decision in *Perez-Rodriguez* foreclose such a broad reading of *Gutale*, but the court in *Gutale* itself considered the petitioner's "situation" only insofar as it considered what the petitioner had been told (or not told) about immigration consequences when he entered his guilty plea and what a "reasonable person" would have understood as a result. *See Gutale*, 364 Or at 519-20. The court did not consider any personal characteristics of the petitioner. *See id*.

Finally, it is important to recognize that *Gutale* applies existing principles of post-conviction case law and contains no indication that the court intended to change the law. *See Gutale*, 364 Or at 512-14; *but see also id*. at 524 (Balmer, J., dissenting) (taking the view that the majority's opinion is less in line with existing case law than it claims). It is possible that *Gutale* signals a subtle change in thinking about the escape clause in ORS 138.510(3) that may eventually lead to *Fisher* being overruled. We do not exclude that possibility. However, nothing in *Gutale* suggests to us that *Gutale* itself overrules *Fisher* or the long line of prior cases on which we relied in *Fisher*.

In sum, petitioner has failed to persuade us that *Gutale* implicitly overruled *Fisher*. *Fisher* therefore remains controlling precedent in this court. Under *Fisher*, a petitioner's allegation that his mental illness rendered him personally unable to appreciate the significance of available

information is insufficient to trigger the escape clause in ORS 138.510(3). It follows that the post-conviction court did not err when it dismissed petitioner's petition as untimely, notwithstanding petitioner's allegations that his mental health circumstances and intellectual disability made him incapable of appreciating the information relevant to his claim.

We note that petitioner has not asked us to overrule *Fisher* ourselves. Nor are we inclined to do so *sua sponte*, based on the arguments that have been made, and given the "rigorous" standard for overruling our own precedent articulated in *Civil*, 283 Or App at 417. "*Stare decisis* is at its zenith in the area of statutory construction." *Merrill*, 303 Or App at 119. "We will overrule prior statutory interpretation only in extraordinary circumstances—when such prior interpretation was plainly erroneous"—which "'usually occurs when our precedent cannot be reconciled with the result that would follow application of a prescribed (or subsequently prescribed) mode of analysis or when we are presented with a qualitatively new, potentially dispositive contention not previously raised and addressed.'" *Id.* at 120 (quoting *Civil*, 283 Or App at 416). We are not persuaded that *Fisher* is *irreconcilable* with subsequent case law (as it exists at this time) or is otherwise "plainly wrong."[8]

The Supreme Court ultimately may decide that the legislature that enacted ORS 138.510(3) *did* intend for post-conviction courts to consider a petitioner's mental health or other personal characteristics when applying the escape clause. As recognized in *Perez-Rodriguez*, 364 Or at 498-99, there are competing arguments and considerations relevant to that question. The dissent makes some points about

---

[8] We have previously described *Fisher* as a "considered" decision "based on engaged analysis." *Hernandez-Zurita v. State of Oregon*, 290 Or App 621, 631, 417 P3d 548 (2018), *vac'd,* 365 Or 194, 451 P3d 236 (2019) (declining to overrule *Fisher*). After deciding *Gutale* and *Perez-Rodriguez,* the Supreme Court vacated our decision in *Hernandez-Zurita* and remanded the case to us, and we then remanded the case to the trial court for reconsideration in light of *Gutale*, as jointly requested by the parties. That subsequent history is unsurprising because *Hernandez-Zurita* involved exactly the same issue as *Gutale*: a post-conviction claim that the petitioner's trial counsel failed to properly advise him of the immigration consequences of his guilty plea, which he allegedly discovered only upon his deportation more than two years later. *Id.* at 623.

legislative history that may prove helpful. *See* 315 Or App at 444-45 (Tookey, J., dissenting); *but see also Gutale*, 364 Or at 524-28 (Balmer, J., dissenting) (arguing that the legislative history favors a narrower construction of the escape clause). If the court does go that way, it will presumably need to address the identical escape clause in ORS 138.550(3), which it has previously construed as *not* allowing consideration of the personal characteristics of the petitioner—or, presumably, the petitioner's lawyer. *Perez*, 367 Or at 113. There is also the fact that *all* petitioners have personal characteristics. Even if one somehow limits the personal characteristics relevant to the escape clause to intellectual disabilities or mental health conditions, it is uncertain how "narrow" a class of petitioners that is. *See Gutale*, 364 Or at 514 (considering the "narrow class of petitioners" affected by its decision as supporting the outcome). Finally, there is the difficulty of administrability, which the Supreme Court has already recognized. *See Perez-Rodriguez*, 364 Or at 498 (recognizing that at least part of the reason that, "[f]requently, reasonableness standards do not consider an actor's mental illness or intellectual capacity" is "because of the problems of administrability that would be encountered" (internal quotation marks omitted)).

There is no existing precedent for a post-conviction court to consider the personal characteristics of a petitioner in applying the escape clause in ORS 138.510(3). That, of course, in no way precludes the Supreme Court from deciding that the legislature intended such consideration and that post-conviction courts must give such consideration. Until and unless that happens, however, *Fisher* is controlling authority in this court, with respect to consideration of a petitioner's personal mental health circumstances or intellectual disability, and it is dispositive in this case. Accordingly, we affirm.[9]

Affirmed.

---

[9] Were the Supreme Court to overrule *Fisher* and hold that a petitioner's alleged intellectual disability or mental illness must be considered for purposes of the escape clause in ORS 138.510(3), we would likely agree with the dissent that petitioner's allegations in this case would suffice to create a triable issue. *See* 315 Or App at 449-53 (Tookey, J., dissenting). Given our disposition, however, we need not conclusively opine on that issue.

**TOOKEY, J.,** dissenting.

This case calls upon us to consider mental illness in relationship to the application of the "escape clause" set forth in ORS 138.510(3). That escape clause "allow[s] petitioners to escape the consequences of an untimely filing if the claims for relief could not reasonably have been raised" within the two-year limitation period, *Canales-Robles v. Laney*, 314 Or App 413, 418, 498 P3d 343 (2021), and its purpose is, at bottom, to ensure that post-conviction petitioners are not unfairly denied access to justice.

In this case, petitioner argues that his untimely petition falls within the escape clause, because during the limitation period, the circumstances of his mental illness substantially impaired his ability to read, to think, and to comprehend the legal remedies available to him.

As the majority observes, petitioner's argument raises a threshold question: whether mental illness can ever justify application of the escape clause. 315 Or App at 418. Guided by the recent Supreme Court decisions in *Gutale v. State of Oregon*, 364 Or 502, 435 P3d 728 (2019), and *Perez-Rodriguez v. State of Oregon*, 364 Or 489, 435 P3d 746 (2019), I would answer that question in the affirmative and reverse the dismissal of petitioner's petition. The majority, however, answers that question in the negative, relying on an earlier decision of this court, in *Fisher v. Belleque*, 237 Or App 405, 240 P3d 745, *rev den*, 349 Or 601 (2011), to support its view that "a petitioner's unique personal characteristics" are "not relevant" to the escape clause analysis, and therefore, we must affirm the dismissal of petitioner's petition as untimely. 315 Or App at 424, 425-26. Thus, according to the majority, a petitioner's mental illness—no matter how profound and prolonged—cannot justify application of the escape clause.

I disagree with the majority's view. Instead, as explained below, I would conclude that, in certain circumstances, a petitioner's mental illness is relevant to—and can justify application of—the escape clause; that such application is consistent with recent Supreme Court case law regarding the escape clause and with the legislative purpose behind the escape clause (*i.e.*, to ensure a petitioner's access

to justice); and that *Fisher* does not foreclose application of the escape clause in this case.

I would further conclude that a petitioner's mental illness is, *by itself*, not enough to justify application of the escape clause; rather, to justify application of the escape clause, a petitioner must allege not only the existence of a mental illness but also some additional fact or facts about how, due to that mental illness, a reasonable person in the petitioner's situation would not have thought to investigate the existence of the asserted ground for relief during the limitation period.

In light of that conclusion, and for the reasons that follow, I would reverse the post-conviction court's dismissal of petitioner's petition and remand. On that basis, I respectfully dissent, and I would resolve the case as follows.

## I.   STANDARD OF REVIEW

We review a post-conviction court's dismissal of a petition as untimely for legal error. *Zsarko v. Angelozzi*, 281 Or App 506, 508, 385 P3d 1239, *rev den*, 361 Or 312 (2017). Our review "is limited to the face of the [petition]," *id.*, "including exhibits incorporated by reference" in that petition, *Boardmaster Corp. v. Jackson County*, 224 Or App 533, 535, 198 P3d 454 (2008). In conducting our review, "we assume the truth of all allegations in the petition and give petitioner, as the nonmoving party, the benefit of all favorable inferences that could be drawn from those allegations." *Zsarko*, 281 Or App at 508 (internal quotation marks omitted). Consistent with that standard, "we draw the facts from the petition, supplementing them with the pertinent procedural facts." *Id.*

## II.   FACTUAL BACKGROUND

On November 10, 2009, petitioner appeared at a stipulated-facts trial and was found guilty except for insanity of second-degree manslaughter and driving under the influence of intoxicants. He was subsequently placed under the jurisdiction of the Psychiatric Security Review Board (PSRB) and committed to the Oregon State Hospital (OSH) for a period of time not to exceed 20 years. Petitioner did not appeal those 2009 convictions.

More than eight years later, in 2018, petitioner filed a petition for post-conviction relief, alleging that he had received ineffective assistance of counsel at his trial.[1] His petition admitted that it was untimely under the two-year limitation period in ORS 138.510(3) but asserted that it came within the "escape clause" of ORS 138.510(3) because "petitioner was intellectually disabled as a result of his diagnosed schizophrenia and his forced consumption of extremely powerful psychotropic medications."

Petitioner's petition further alleged that

"petitioner's mental disease and consumption of pre-scribed medications *** substantially impaired his ability to concentrate, to reason, to understand the legal remedies available to challenge his convictions, and to understand the legal proceedings that resulted in his imposed sen-tence. Petitioner's mental disease substantially impaired his ability to read and comprehend legal documents related to those proceedings and deprived him of the ability to appreciate, identify, allege, and support with the requisite evidence, [his post-conviction] claim for relief."

Additionally, in a declaration attached to and ref-erenced in his petition, petitioner explained the circum-stances of his mental health that persisted throughout the limitation period and prevented him from timely filing his petition:

"I was diagnosed with schizophrenia prior to the alleged acts that resulted in my above-listed criminal charges. I had recently begun treatment for that ailment, which included the daily ingestion of very powerful psychotropic medications.

"*****

"I remained heavily medicated for years to come. As a result, on or between November 10, 2009, and the time of filing my original petition in this case, [*i.e.*, March 4, 2018,] I was unable to:

"(a)   Adequately concentrate on a single subject;

---

[1] Petitioner originally filed his petition *pro se*, then filed an amended petition with assistance from counsel, and later filed a second amended petition, which is the petition at issue in this appeal, and which I refer to throughout the opinion as simply the "petition."

"(b) To logically reason and understand legal remedies available to me that would allow me to challenge my convictions; and

"(c) To understand the legal proceedings that resulted in my convictions."

Petitioner's petition concluded that, "[b]ased on the conditions of petitioner's confinement and his substantially impaired mental condition, the information required to timely raise the grounds for relief alleged [w]as not reasonably available to petitioner during the two-year period following entry of his judgment of convictions."

In response, the state moved under ORCP 21 A(9) to dismiss petitioner's petition as untimely under the two-year limitation period in ORS 138.510(3). The post-conviction court granted the state's motion to dismiss, ruling that the petition was both untimely and did not fall within the escape clause.

On appeal, petitioner assigns error to the post-conviction court's dismissal of his petition as untimely. He argues that his petition falls within the escape clause of ORS 138.510(3) because personal circumstances related to his mental illness "prevented him from reasonably being able to raise his [post-conviction] claim within the limitations period," and that "[t]hose circumstances were sufficient to survive the state's motion to dismiss the petition as untimely." The state responds that under our decision in *Fisher v. Belleque*, 237 Or App 405, 240 P3d 745, *rev den*, 349 Or 601 (2011), "ORS 138.510(3)'s escape clause [does not] allow late post-conviction claims solely because the petitioner's diminished mental capacity interfered with [his] ability to file a timely petition."

As explained below, I would conclude that petitioner's petition falls within the escape clause of ORS 138.510(3).

### III. ANALYSIS

A. *The Escape Clause of ORS 138.510(3)*

Under ORS 138.510(3), a petition for post-conviction relief must be filed within two years of the date of conviction, unless the petition falls within that statute's "escape

clause."[2] The escape clause provides that a petitioner may file an untimely petition by asserting "grounds for relief * * * *which could not reasonably have been raised*" within the two-year limitations period. ORS 138.510(3) (emphasis added). The meaning of that clause is a matter of statutory construction. And, under our normal principles of statutory construction, the first level of analysis calls for examining not only the statutory text, in context, but also prior judicial constructions of that text, which are binding on this court. *See, e.g.*, *Liberty Northwest Ins. Corp., Inc. v. Watkins*, 347 Or 687, 692, 227 P3d 1134 (2010) ("As part of that first level of analysis, this court considers its prior interpretations of the statute."). Accordingly, this dissent examines several Supreme Court cases construing the escape clause in ORS 138.510(3), which provide necessary context for the remainder of the analysis in this case.

1.   Bartz v. State of Oregon

In *Bartz v. State of Oregon*, 314 Or 353, 357, 839 P2d 217 (1992), the Supreme Court was called upon to construe the escape clause. The petitioner in *Bartz* had filed a petition for post-conviction relief, asserting that his "trial counsel had failed to advise him of a possible statutory defense to the charge" and that he had not learned of that defense within the applicable limitation period. *Id.* at 356-57. The *Bartz* petitioner contended that, because his trial counsel failed to advise him of that possible defense, he "could not reasonably have known of that defense within the [limitation] period" and, therefore, his petition fell within the escape clause in ORS 138.510(3). *Id.* at 357.[3]

---

[2] ORS 138.510(3) sets forth the statute of limitations for claims under the Post-Conviction Hearing Act (PCHA) and provides, in relevant part:

"A petition pursuant to [the PCHA] must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"(a)  If no appeal is taken, the date the judgment or order on the conviction was entered in the register."

[3] At the time *Bartz* was decided, the applicable escape clause was codified in subsection (2) of ORS 138.510. Although the escape clause was renumbered as subsection (3) pursuant to later amendments to ORS 138.510, those amendments did not alter the text of the escape clause as relevant for our purposes. Accordingly, throughout this opinion, we refer to the escape clause as it is currently numbered, *i.e.*, ORS 138.510(3).

In undertaking its analysis, the court in *Bartz* recognized that ORS 138.510(3) is "ambiguous." *Id.* at 357. That is, it "does not explain precisely what kinds of circumstances fulfill the [escape clause's] requirement that an untimely petition assert a ground for relief that 'could not reasonably have been raised' in a timely petition." *Id.* at 358 (quoting ORS 138.510). The court determined that the applicability of the escape clause turned on whether a petitioner's asserted ground for relief was "reasonably available" during the limitation period. *Id.* at 359-60; *see also Brown v. Baldwin*, 131 Or App 356, 361, 885 P2d 707, *rev den*, 320 Or 507 (1995) ("*Bartz* makes it clear that the applicability of the escape clause turns on whether the information existed or was reasonably available to the petitioner[.]").

Ultimately, the court concluded that the petitioner did not fall within the escape clause, because the statutes relevant to his defense had been published by the legislature, and it is "a basic assumption of the legal system" that such publication is "sufficient to inform persons of statutes that are relevant to them"; therefore, the court held, "the relevant statutes were reasonably available" to the petitioner. *Bartz*, 314 Or at 360.

In so holding, the court also explained that a review of the relevant legislative history showed that the escape clause was intended to "give persons extra time to file petitions for post-conviction relief in extraordinary circumstances" and was meant to be "construed narrowly." *Id.* at 358-59.

   2.   Gutale v. State of Oregon

Nearly two decades later, in *Gutale v. State of Oregon*, 364 Or 502, 435 P3d 728 (2019), the Supreme Court again considered the meaning of the escape clause.

In *Gutale*, the petitioner filed for post-conviction relief, alleging that his trial counsel was constitutionally inadequate and ineffective for failing to inform him of the immigration consequences of his conviction. *Id.* at 504. The petitioner contended that he had only discovered counsel's failure when he was placed in deportation proceedings, after the limitation period had already run. *Id.* In the petitioner's

view, because "he could not reasonably have known of his grounds for post-conviction relief within the limitations period," his petition fell within the escape clause. *Id.* In response, the state argued that the petitioner's position was precluded by *Bartz*, because the relevant law regarding immigration consequences is settled, and *Bartz* held that "settled law is always reasonably available to a petitioner." *Id.* at 509.

The court explained that it did "not read *Bartz* as narrowing the escape clause as much as the state maintains," and that "a ground for relief is reasonably available only if there was a reason for the petitioner to look for it." *Id.* at 509, 511. The court then explained,

> "What distinguishes the petitioner in *Bartz* and petitioner in this case is *whether they had a reason to look for the existence of legal grounds for relief.* For the petitioner in *Bartz*, the conviction itself put him on notice of the need to investigate the existence of a ground for relief. He was, of course, aware of that conviction at the time it occurred. It was, therefore, incumbent on the petitioner to look for legal challenges to his conviction. And the court concluded in *Bartz* that, given the public nature of legislative enactments, the legal grounds for the petitioner's challenge would have been accessible to a reasonable person looking for such a legal challenge.

> "For petitioner in this case, however, his conviction may not have put him on notice of the need to investigate. Instead, petitioner alleges that it was the consequences of that conviction that caused him to conduct such an investigation. And those consequences are not always obvious, even to lawyers."

*Id.* at 512 (emphasis added). Thus, the court concluded, because the petitioner had no reason to look for the grounds for relief alleged in his petition "until he was detained by ICE after the limitations period expired," the petitioner's petition would fall within the escape clause. *Id.* at 520.

In reaching that conclusion, the court observed that, "[a]ccording to the court in *Bartz*, the purpose of the escape clause was 'to give persons extra time to file petitions

for post-conviction relief in extraordinary circumstances'" and "should be 'construed narrowly.'" *Id.* at 513-14 (quoting *Bartz*, 314 Or at 358-59). But, the court pointed out, *Bartz* did not "attempt to identify the boundaries of what counts as extraordinary or to define just how narrowly to construe the escape clause." *Gutale*, 364 Or at 514. Regarding that point, the court explained,

> "We understand the court in *Bartz* to have been appropriately concerned with reading the escape clause in a manner that would not allow the exception to swallow the rule. The facts presented by the petitioner in *Bartz* were unexceptional. It is not unusual for a petitioner to be unaware of the law pertaining to the crime of conviction. If that fact, without further qualification, were sufficient to bring a claim within the escape clause, then it is likely that most claims—and certainly most claims for ineffective assistance of counsel—would fall within the escape clause. That result would defeat the goal that the legislature was attempting to advance by passing the statute of limitations in the first place."

*Id.* With *Bartz*'s concern about narrow construction in mind, the court observed that "[t]his case does not present those same concerns," because "petitioners who were unaware of the immigration consequences of their convictions are a narrow class of petitioners," and "[a]llowing petitioner's claim in this case to fall within the escape clause does not run the risk of having the escape clause swallow the statute of limitations." *Id.*

The court further observed that "[a]dditional analysis of the legislative history tells us little about the intended scope of the escape clause." *Id.* at 516. The court noted, however, that that history does make clear "that the text of the escape clause contained in ORS 138.510(3) [regarding the limitation period for initial petitions] is derived from its ORS 138.550(3) counterpart [regarding successive petitions]." *Id.* at 517. The court then explained that "[t]he escape clause to the statute of limitations differs from the escape clause to the bar on successive petitions in one important respect": The subject of the reasonableness inquiry under ORS 138.550(3) is an *attorney* representing the petitioner, whereas "the subject of the reasonableness

inquiry in ORS 138.510(3) is an *unrepresented petitioner.*" *Id.* at 518-19 (emphasis added).[4]

Thus, consistent with the foregoing observations, the court in *Gutale* clarified the standard for determining whether a petition falls within the escape clause of ORS 138.510(3): Whether grounds for relief could not reasonably have been timely raised turns on "whether the grounds for relief were known or *reasonably available* to a petitioner," *id.* at 509 (emphasis added), which, in turn, requires "assessing both [(1)] whether the petitioner reasonably could have accessed the ground for relief and [(2)] whether a reasonable person *in the petitioner's situation* would have thought to investigate the existence of that ground for relief," *id.* at 512 (emphasis added).

The court noted that "that standard is very similar to the standard for a discovery rule, which is used in other contexts." *Id.* at 512. In other words, the reasonableness inquiry in ORS 138.510(3)'s escape clause "call[s] for a judgment about what is reasonable *under the circumstances*" of an unrepresented petitioner. *Id.* at 513 (internal quotation marks omitted; emphasis added).

3.   Perez-Rodriguez v. State of Oregon

On the same day that the Supreme Court decided *Gutale*, it also decided *Perez-Rodriguez v. State of Oregon*, 364 Or 489, 435 P3d 746 (2019). Applying the standard from *Gutale*, the court addressed whether a petitioner's mental illness may justify application of the escape clause.

In *Perez-Rodriguez*, the petitioner argued that "his mental illness and intellectual disability prevented him from knowing that he had a claim for post-conviction relief

---

[4] Although this court has recognized a rule of construction that "use of the same word or phrase throughout the statute demonstrates that the word [or phrase] has the same meaning throughout the statute," *State v. Lambert*, 227 Or App 614, 618, 206 P3d 1065 (2009), "such rules of interpretation are mere assumptions that always give way to more direct evidence of legislative intent," *Brown v. SAIF Corp.*, 361 Or 241, 260, 391 P3d 773 (2017) (internal quotation marks omitted). Consequently, though the text of the escape clause in ORS 138.510(3) is identical to the escape clause in ORS 138.550(3), the two provisions have, as noted above, been construed by the Supreme Court to require different analyses. *See Gutale*, 364 Or at 517-19 (differentiating analyses under ORS 138.510(3) and ORS 138.550(3)).

within the two-year limitations period." *Id.* at 491. The petitioner's petition "attached a declaration from a clinical social worker, who stated that petitioner has schizoaffective disorder, which may include 'hallucinations, paranoia, delusions, and disorganized speech and thinking,'" and he "alleged that those disabilities affected his ability to understand his circumstances." *Id.* at 494.

The *Perez-Rodriguez* court noted that the petitioner's argument raised two questions: "(1) whether a petitioner's mental illness and intellectual disability may ever justify applying the escape clause and (2) if so, whether the particular mental illness and intellectual disability that petitioner alleges are sufficient allegations to establish, for assessing the state's motion to dismiss, that petitioner could not reasonably have brought his claim during the limitations period." *Id.* at 497-98.

Regarding the first question, the court said that it was "hesitant" to decide "whether a petitioner's mental illness and intellectual disability may ever justify applying the escape clause," because "[t]he parties' arguments on that question are significantly underdeveloped" and "the question is not an easy one." *Id.* at 498.

The court explained that "[t]he escape clause uses a reasonableness standard"; that reasonableness standards often "do not consider an actor's mental illness or intellectual capacity"; and that "part of the reason for not considering an actor's mental illness or intellectual capacity is [due to] problems of administrability." *Id.* (citing *Restatement (Third) of Torts: Phys & Emot Harm* § 11 comment e (2010)).

The court further explained, however, that "many statutes of limitations are subject to a discovery rule that applies a reasonableness standard," and that, "in applying statutes of limitation, courts frequently consider mental illness or intellectual capacity as part of a statutory or common-law tolling rule that is separate from the discovery rule's reasonableness inquiry." *Id.* (citing ORS 12.160(3) (considering whether a "person has a disabling mental condition" at the time a cause of action accrues)). And, the court observed, "the reasons for not considering an actor's mental

illness or intellectual capacity in one context may not be applicable here." *Id.* at 499.

Ultimately, the court concluded that it need not resolve the first question (*i.e.*, whether a petitioner's mental illness and intellectual disability may ever justify applying the escape clause): The court reasoned that, "even if a petitioner's mental illness and intellectual disability *could* justify applying the escape clause, [the] petitioner's specific allegations here would not justify applying the escape clause in this case." *Id.* (emphasis in original).[5]

In addressing the second question (*i.e.*, whether the particular mental illness and intellectual disability alleged by the petitioner brought his petition within the escape clause), the court concluded that the "petitioner's allegations about his mental illness fail to establish that he did not have the capacity to file his petition within the statute of limitations." *Id.* at 500. The court reasoned that "[s]imply having schizoaffective disorder is, *by itself*, insufficient," and that the petitioner "does not allege, for example, that his mental illness led to any—let alone, prolonged—periods of psychosis during the limitations period." *Id.* (emphasis added).

B.  *Application of the Escape Clause in the Instant Case*

In this case, I do not understand petitioner to argue that his untimely petition satisfies the first prong of the standard set out in *Gutale* for applying the escape clause— *i.e.*, that he could not have accessed the ground for relief asserted in his petition. Rather, I understand petitioner's argument to be that his untimely petition satisfies the second prong of that standard—*i.e.*, that a reasonable person in his situation would not have thought to investigate the existence of the grounds for relief asserted in his petition. More specifically, as explained above, petitioner argues that his untimely petition falls within the escape clause because he was unable to raise his claim within the limitation period due to the circumstances of his mental illness. Consequently,

---

[5]  Although the court in *Perez-Rodriguez* declined to answer the first question, if a "petitioner's situation," as referenced in *Gutale*, 364 Or at 512, necessarily *did not* include a petitioner's mental illness, then presumably the Supreme Court would have said as much in addressing the first question in *Perez-Rodriguez*, rather than saying it was not easy and expressly leaving it for another day.

assessing whether petitioner satisfies the second prong of the *Gutale* standard requires answering two questions left open by *Perez-Rodriguez*—*i.e.*, (1) Can mental illness ever justify application of the escape clause, and (2) if so, what must a petitioner show?

As to the first question, I recognize—as noted in *Perez-Rodriguez*—that it "is not an easy one." 364 Or at 498. Yet I think that the answer is yes; under certain circumstances, a petitioner's mental illness may justify application of the escape clause. That answer to the first question pertains *only* to a petitioner's mental illness; I express no opinion as to what, if any, other aspects of a petitioner's situation might (or might not) be relevant to justifying application of the escape clause.

As to the second question, for the reasons explained below, I would conclude that petitioners face a high burden, requiring more than merely alleging that they have a mental illness; rather, petitioners must show not only the existence of their mental illness but also some additional fact or facts about how, due to that mental illness, a reasonable person in the petitioner's situation would not have thought to investigate the existence of the asserted ground for relief during the limitation period.

1. *Can mental illness ever justify application of the escape clause?*

As stated above, I would conclude that a petitioner's mental illness may, in certain circumstances, justify application of the escape clause.

At the outset, I briefly observe that a "mental illness is a condition that affects a person's thinking, feeling, behavior, or mood," and one such condition is schizophrenia. National Alliance on Mental Illness, Mental Health Conditions, https://www.nami.org/About-Mental-Illness/Mental-Health-Conditions (accessed Oct 19, 2021). With respect to schizophrenia, it "is a serious mental illness that affects how a person thinks, feels, and behaves," and "[p]eople with schizophrenia may seem like they have lost touch with reality[.]" National Institute of Mental Health, Schizophrenia, https://www.nimh.nih.gov/health/topics/schizophrenia

(accessed Oct 19, 2021). The cognitive effects of schizophrenia "include problems in attention, concentration, and memory." *Id*. Schizophrenia can "interfere with activities like following conversations, learning new things, or remembering appointments." *Id*. Additionally, those suffering from schizophrenia "typically experience [d]ifficulty processing information to make decisions; [p]roblems using information immediately after learning it; [and] [t]rouble focusing or paying attention." *Id*. With those observations in mind, I turn to examining whether mental illness can ever justify application of the escape clause.

To reiterate, under ORS 138.510(3), a petition for post-conviction relief must be filed within two years of the date of conviction, unless the petition falls within the escape clause. The escape clause provides that a petitioner may file an untimely petition by asserting "grounds for relief * * * which could not reasonably have been raised" within the two-year limitations period. I observe, as did the court in *Bartz*, that that provision "does not explain precisely what kinds of circumstances fulfill the [escape clause's] requirement that an untimely petition assert a ground for relief that 'could not reasonably have been raised.'" *Id*. at 358 (quoting ORS 138.510). Nevertheless, as I said above, the court in *Gutale* explained that application of the escape clause requires assessing "[(1)] whether the petitioner reasonably could have accessed the ground for relief" and "[(2)] whether a reasonable person *in the petitioner's situation* would have thought to investigate the existence of that ground for relief." 364 Or at 512 (emphasis added).

On its face, the second prong of that standard certainly could be read to allow for consideration of a petitioner's mental illness in assessing whether the petitioner would have thought to investigate a claim for relief, and, thus, whether the escape clause would apply. *See, e.g.*, *Webster's Third New Int'l Dictionary* 2129 (unabridged ed 2002) (defining "situation" to include, among other definitions, "the total set of physical, social, and psychocultural factors that act upon an individual in orienting and conditioning his behavior" and "relative position or combination of circumstances at a given moment").

Moreover, in my view, it would be consistent with the general purpose of the escape clause to conclude that, in some circumstances, mental illness can be considered in determining whether a petitioner has justified application of the escape clause. Prior to 1989, a petition for post-conviction relief under ORS 138.510 could "be filed without limit in time." ORS 138.510(2) (1987); *see also Bartz v. State of Oregon*, 110 Or App 614, 617 n 1, 825 P2d 657, *aff'd*, 314 Or 353, 839 P2d 217 (1992) (noting same). The limitation period set forth in ORS 138.510 was part of an effort by the 1989 legislature "intended to reduce the costs of the state's indigent defense programs." *Bartz*, 314 Or at 358. But "[t]he purpose of the escape clause is to ensure [those cost] savings without injustice." *Fine v. Zenon*, 114 Or App 183, 186, 834 P2d 509 (1992) (citing Tape Recording, House Committee on Judiciary, Civil Subcommittee, SB 284, June 12, 1989, Tape 122, Side A (statement of Ross Shepard)); *see also Gutale*, 364 Or at 533 (Balmer, J., dissenting) ("Strict statutes of limitation have their advantages, but their price is that they occasionally produce harsh results and unfairness.").

In my view, it would work an injustice to conclude, as a matter of law, that a petitioner's mental illness—no matter how profound and prolonged—can never be considered in connection with application of the escape clause. Put another way, it would be inconsistent with the ends of justice—and, therefore, the purpose of the escape clause—to save money by prohibiting petitioners from filing claims for post-conviction relief where the circumstances of their mental illness prevented them from thinking to investigate the existence of a claim for relief before the two-year limitation period in ORS 138.510(3) had run.

Furthermore, applying the escape clause in the context of a petitioner's mental illness is similar to its application in other contexts. Petitioners have relied on the escape clause where their untimely claims involve "newly discovered facts" or "changes in the law." *Verduzco v. State of Oregon*, 357 Or 553, 566, 355 P3d 902 (2015); *see also Eklof v. Steward*, 360 Or 717, 734, 385 P3d 1074 (2016) (considering whether petition based on newly discovered *Brady* evidence fell within escape clause); *Chavez v. State of Oregon*, 364 Or 654, 663, 438 P3d 381 (2019) (determining that petition based on new

law announced in *Padilla v. Kentucky*, 559 US 356, 130 S Ct 1473, 176 L Ed 2d 284 (2010), fell within escape clause). Allowing application of the escape clause in instances involving a petitioner's mental illness—at least where, due to that mental illness, a reasonable person in the petitioner's situation would not have thought to investigate the existence of that ground for relief during the limitation period—is no different: The common feature is that these cases represent extraordinary circumstances, where a petitioner has only recently discovered a claim generally barred by the limitation period, and the escape clause functions to allow an otherwise untimely petition in the interests of justice.

So, in other words, the escape clause fundamentally serves as a means of promoting access to justice. In light of the purpose of the escape clause, I see no principled reason to favor petitions that are untimely due to newly discovered facts or newly announced law over petitions that are untimely due to the effects of a petitioner's mental illness.

I also emphasize that petitioners who meet the standard for application of the escape clause in connection with mental illness—as articulated in greater detail below—are a narrow class. Thus, to recognize that, in some circumstances, mental illness can justify application of the escape clause, does not, as articulated by the court in *Gutale*, "run the risk of having the escape clause swallow the statute of limitations," 364 Or at 514, and such recognition is consistent with *Bartz*'s observation that the escape clause is meant to be "construed narrowly," 314 Or at 359.[6]

It is true, as noted in *Perez-Rodriguez*, that "[t]he escape clause uses a reasonableness standard," that reasonableness standards often "do not consider an actor's mental

---

[6] I note that, in this opinion, I consider only whether, and under what circumstances, mental illness can justify application of the escape clause set forth in ORS 138.510(3). Should the issue ever come before this court, a different analysis would need to be undertaken with respect to ORS 138.550(3), which as I explained above, governs successive petitions for post-conviction relief.

That the analysis in this opinion applies only to petitions under ORS 138.510(3) (where the subject of the reasonableness inquiry is the *petitioner*) and not successive petitions under ORS 138.550(3) (where the subject of the reasonableness inquiry is an *attorney* representing the petitioner) is another way that, in my view, the conclusion reached in this opinion is a narrow one.

illness or intellectual capacity," and that "part of the reason for not considering an actor's mental illness or intellectual capacity is [due to] problems of administrability." 364 Or at 498 (internal quotation marks omitted). But I think that consideration of a petitioner's mental illness is unlikely to present significant problems of administrability with respect to the escape clause's reasonableness standard.

The administrability problems mentioned by the Supreme Court in *Perez-Rodriguez* pertain specifically to the tort standard of liability. 364 Or at 499 (citing *Restatement (Third) of Torts: Phys & Emot Harm* § 11 comment e (2010)). But, as the *Perez-Rodriguez* court opined, "the reasons for not considering an actor's mental illness or intellectual capacity in one context may not be applicable in" other contexts. 364 Or at 499. Courts in several jurisdictions routinely consider mental illness in the context of equitable tolling of statutes of limitation, including in connection with post-conviction claims. *See, e.g.*, *Milam v. Harrington*, 953 F3d 1128, 1130-32 (9th Cir 2020) (noting that "equitable tolling for mental impairment is available in myriad circumstances," and holding that district court erred in refusing to consider whether federal habeas petitioner's mental impairment caused the untimely filing of his petition); *see also Bills v. Clark*, 628 F3d 1092, 1093, 1100 n 3 (9th Cir 2010) (considering whether "a petitioner's mental condition" constitutes "an extraordinary circumstance justifying equitable tolling of the untimely filing of a habeas petition," and articulating a standard requiring courts "to evaluate how a petitioner's mental impairment bore on his ability to file" a petition for post-conviction relief); *Barrett v. Principi*, 363 F3d 1316 (Fed Cir 2004) (observing "the widespread support for equitable tolling based on mental illness that has developed over the last fifteen years," noting that "several circuits have allowed equitable tolling based on mental illness," and collecting cases). Courts also consider mental disability in apportioning fault in civil cases. *See, e.g.*, *Restatement (Third) of Torts: Phys & Emot Harm* § 11 comment e (2010) (noting mental disability can be considered during the "process of apportioning percentages of responsibility between the plaintiff and the defendant"). And within the criminal law context, courts frequently grapple with concerns

regarding mental illness. *See, e.g.*, *id.* § 11 comment e (noting litigation of the insanity defense in the criminal-justice system).

In the end, however, whether problems of administrability will result from a reasonableness standard that contemplates a petitioner's mental health circumstances is a matter of time and experience, not of prognostication. And if, in time, experience demonstrates that such problems do, in fact, arise, I am confident that the legislature would be more than capable of determining as much and crafting an appropriate legislative solution.

In sum, based on the foregoing considerations and understanding of the evaluative framework advanced in *Gutale* and *Perez-Rodriguez*, I would conclude that, depending on the particular factual circumstances involved, application of the escape clause may be justified in cases where, due to mental illness, a petitioner would not have thought to investigate the existence of a claim for post-conviction relief within the two-year limitation period.

2. *What must petitioners show to justify applying the escape clause based on mental illness?*

Having concluded that there are some circumstances in which mental illness may justify application of the escape clause, I turn next to determining what those circumstances are, guided in particular by the Supreme Court's discussion in *Gutale* and *Perez-Rodriguez*.

As noted above, the court in *Gutale* explained that the reasonableness standard in ORS 138.510(3)'s escape clause requires assessing "[(1)] whether the petitioner reasonably could have accessed the ground for relief and [(2)] whether a reasonable person *in the petitioner's situation* would have thought to investigate the existence of that ground for relief," and that that standard "call[s] for a judgment about what is reasonable *under the circumstances*" of an unrepresented petitioner. *Gutale*, 364 Or at 512-13 (emphases added).

As stated above, the court in *Perez-Rodriguez* concluded that the petitioner's allegations regarding his mental illness did not suffice to justify application of the escape

clause, in part, because "[s]imply having schizoaffective disorder is, *by itself*, insufficient," and that the petitioner "does not allege, for example, that his mental illness led to any— let alone, prolonged—periods of psychosis during the limitations period." *Perez-Rodriguez*, 364 Or at 500 (emphasis added).

In light of the Supreme Court's discussion of the applicable standard in *Gutale* and *Perez-Rodriguez*, I understand that a petitioner's mental illness is, *by itself*, not enough to justify application of the escape clause; rather, as implied in the court's discussion in *Perez-Rodriguez*, in regard to the second prong of the *Gutale* standard, a petitioner must allege not only that they have a mental illness but also some additional fact or facts about how, due to that mental illness, a reasonable person *in the petitioner's situation* would not have thought to investigate the existence of a ground for relief.

Accordingly, application of the escape clause requires this court to examine the particular factual circumstances in each case involving an untimely petition and make "a judgment about what is 'reasonable' under th[ose] circumstances." *Gutale*, 364 Or at 513 (quoting *Verduzco*, 357 Or at 566). In assessing those circumstances, I further understand that, among other factors, the duration and intensity of a petitioner's mental illness are important factors for the court to consider in determining whether a petitioner would have thought to investigate a claim for relief and, thus, whether the escape clause would apply.[7]

3. *Petitioner's petition falls within the escape clause.*

As explained above, petitioner contends that he did not investigate and raise his claim within the limitations period due to circumstances related to his mental illness.

_____

[7] I observe that the definition of the word "circumstances" includes, as relevant here, "a condition, fact, or event accompanying, conditioning, or determining another," and "the total complex of essential attributes and attendant adjuncts of a fact or action : the sum of essential and environmental characteristics : arrangement, situation, composition, or nature of an event or thing." *Webster's Third New Int'l Dictionary* 410 (unabridged ed 2002). I understand that facts alleged in a petition for post-conviction relief regarding a petitioner's mental illness would come within that definition of "circumstance."

Thus, resolution of this case turns on whether—given the circumstances of his mental illness—petitioner's untimely filing was reasonable so as to justify application of the escape clause.

Here—assuming the truth of petitioner's allegations regarding his mental illness and giving petitioner the benefit of all reasonable inferences that may be drawn therefrom—I believe those allegations are sufficient to show that petitioner's petition falls within the escape clause of ORS 138.510(3).

For one, given the circumstances of petitioner's mental illness, I do not think that someone in those circumstances would have thought to—much less, been *able* to—investigate the existence of grounds for a post-conviction relief claim. Assuming the truth of petitioner's allegations—as is required at this stage of the proceedings—his mental health circumstances substantially impaired his ability to concentrate on a single subject; to logically reason; to read and comprehend legal documents; to understand the legal proceedings that resulted in his convictions; to understand the legal remedies available to challenge his convictions; and to identify, allege, and support with evidence a post-conviction claim for relief. In light of those impairments, it is difficult to understand how petitioner could have thought to investigate whether he had grounds for raising a claim.

Moreover—in contrast with the *Perez-Rodriguez* petitioner's simple allegation that he had a mental illness—petitioner in this case did not merely allege that he has a mental illness. Instead, petitioner alleged that he has been diagnosed with a mental illness, *viz.*, schizophrenia; that his mental illness resulted in a "substantially impaired mental condition"; that because of his mental illness, he could not adequately concentrate, reason, read, or comprehend his legal situation; and that his substantially impaired condition persisted for years, from the time of his conviction until he filed his petition for relief.

In addition to those allegations, a further indication of the duration and intensity of petitioner's impaired mental condition may be drawn by inference from the fact that he

had been found guilty except for insanity, placed under the jurisdiction of the PSRB, and committed to OSH during the limitation period and beyond. *Cf. Perez-Rodriguez*, 364 Or at 500 (citing *Grant v. McDonnell Douglas Corp.*, 163 F3d 1136, 1138 (9th Cir 1998) (holding that equitable tolling based on mental condition may be appropriate "in exceptional circumstances, such as institutionalization or adjudged mental incompetence")).

It is also worth noting that petitioner's allegations regarding his mental illness present an exceptional case in contrast to the *Bartz* petitioner's "unexceptional" allegations (*i.e.*, that he was unaware of the existing law), which the court said did not justify application of the escape clause. Relatedly, unlike in *Bartz*, there is little reason to think that applying the escape clause in this case runs the risk of allowing the exception to swallow the rule; petitioner belongs to the narrow class of first-time petitioners whose circumstances include mental illness of such duration and intensity as to prevent them from thinking to investigate their post-conviction claims until after the limitation period had run.

Thus, taken together, I think that petitioner's allegations about the circumstances of his mental illness are sufficient to bring his petition within the escape clause.

The state contends, however, that "the [post-conviction] court was not required to accept those allegations as true," because "those allegations are directly inconsistent with" two facts: (1) that "during the limitations period, petitioner absconded from OSH for 'several months,' specifically because he was off medication and felt as though he was 'doing fine' without it"; and (2) that during a hearing before petitioner's original criminal trial, he "repeatedly confirmed his competency to aid and assist and specifically indicated that his medication helped his mental capacity rather than diminished it." Consequently, the state suggests, the post-conviction court could have rejected the allegations in petitioner's petition as "sham," or "obviously false."

I am not persuaded by the state's contention. The two facts raised by the state are not necessarily inconsistent with petitioner's allegations. As petitioner has observed, "the

fact that petitioner absconded from the hospital because he believed he was 'fine' potentially supports, not diminishes, his allegation that he was experiencing significant mental illness at the time, especially in light of evidence that he was immediately re-medicated upon his capture and return to the hospital." And the fact that petitioner confirmed his competency *before his criminal trial* is not inconsistent with the allegation that at a later time—*i.e.*, *during the subsequent two-year limitation period*—the circumstances of his mental illness prevented him from investigating and timely filing his petition.

There is another, perhaps more important, reason that I am not persuaded by the state's contention: In ruling on the state's motion to dismiss under Rule 21 A(9), "the trial court must assume the truth of all well-pleaded facts alleged in the [petition]" and give the petitioner "the benefit of all favorable inferences that may be drawn from those facts." *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 95, 376 P3d 960 (2016) (internal quotation marks omitted). The state correctly observes that, pursuant to a Rule 21 E motion, a court may strike "sham" allegations at the pleading stage. But the record does not show that the state made any such motion or that the court struck any allegations from petitioner's petition.

In any event, I am not persuaded that the two facts raised by the state have the effect of rendering petitioner's allegations "sham" or "obviously false," and I assume—as we are required to do under our standard of review—that those allegations are true.

In sum, given the allegations in petitioner's petition about the circumstances of his mental illness—*i.e.*, the extent and duration of his mental illness, and its impact on his investigation and timely filing of his claim for post-conviction relief—I think that those allegations are sufficient to show that a person in petitioner's situation would not have thought to investigate the existence of the grounds for relief asserted in petitioner's petition. For that reason, I would conclude that petitioner's petition falls within the escape clause of ORS 138.510(3). In so concluding, I emphasize that that conclusion regarding the applicability of the

escape clause is limited to circumstances involving a petitioner's mental illness; I express no opinion as to whether any other health conditions might also justify application of the escape clause.

C.  *The State's Contention Regarding* Fisher v. Belleque

In seeking a different result, the state argues that, under this court's decision in *Fisher v. Belleque*, 237 Or App 405, 240 P3d 745, *rev den*, 349 Or 601 (2011), petitioner's allegations about mental illness fail to bring his post-conviction petition within ORS 138.510(3)'s escape clause. I disagree.

In *Fisher*, the petitioner brought an untimely petition for post-conviction relief, arguing that his petition fell within ORS 138.510(3)'s escape clause because "he suffered from clinical depression, dysthymic disorder, and post-traumatic stress disorder" during the limitation period. *Id.* at 408. Importantly, the petitioner did not contend that "the grounds for relief alleged in [his] petition [were] based on information that did not exist or that was not *reasonably available*" to him within the two-year limitation period; rather, the petitioner's "only contention [was] that his mental illness rendered him incapable of appreciating the significance of the information [underlying his claim] that was plainly available during that time." *Id.* at 410-11 (emphasis added). We rejected that contention, explaining that "the applicability of the escape clause turns on whether the information existed or was *reasonably available* to the petitioner," and that "the reasonableness of a petitioner's failure to act on information that is available is simply not enough to trigger the escape clause of ORS 138.510(3)." *Id.* at 410-11 (emphasis in original; citation and internal quotation marks omitted).

As noted above, I disagree with the state's argument and the majority that *Fisher* is determinative in this case. For one, as the *Fisher* court opined in rejecting the petitioner's contention, "the applicability of the escape clause turns on whether the information existed or was *reasonably available* to the petitioner." *Id.* at 410 (emphasis in original). But the petitioner in *Fisher* never argued that the relevant information was not "reasonably available" to him. *Id.* By contrast, in this case, that is precisely the basis for applying

the escape clause that petitioner has raised in his petition: "Based on \*\*\* his substantially impaired mental condition, the information required to timely raise the grounds for relief alleged herein *was not reasonably available* to petitioner during the two year [limitation] period." Thus, the argument petitioner makes in this case is a different argument than the one that the petitioner raised and the court rejected in *Fisher*.

Moreover—and, I think, most importantly—since this court decided *Fisher*, the Supreme Court has clarified that whether grounds for relief were "reasonably available" depends, in part, on a petitioner's specific circumstances and efforts to investigate information relevant to a post-conviction claim. In *Fisher*, we rejected the petitioner's contention that his untimely petition fell within the escape clause by explicitly relying on *Bartz*, 314 Or 353. *Fisher*, 237 Or App at 410-11. We said that "*Bartz* makes it clear that the applicability of the escape clause turns on whether the information existed or was reasonably available to the petitioner, and not on whether the petitioner's failure to seek the information was reasonable." *Fisher*, 237 Or App at 410 (citation and internal quotation marks omitted).

Yet, since we decided *Fisher*, the Supreme Court has indicated that "we \*\*\* cannot assume that *Bartz* provides the final answer on the meaning of ORS 138.510(3)," and clarified that "whether a claim reasonably could have been raised earlier will vary with the facts and circumstances of each claim." *Verduzco*, 357 Or at 565, 571; *see also Eklof v. Steward*, 360 Or 717, 733, 385 P3d 1074 (2016) (explaining that whether grounds for relief reasonably could have been raised "can depend on 'the facts and circumstances of each claim'" (quoting *Verduzco*, 357 Or at 571)). And, even more recently, the Supreme Court in *Gutale* further clarified that the standard for determining whether grounds for relief were "reasonably available" requires assessing "whether a reasonable person *in the petitioner's situation* would have thought to investigate the existence of that ground for relief." 364 Or at 512 (emphasis added).[8] That standard set forth in

---

[8] In *Hernandez-Zurita v. State of Oregon*, 290 Or App 621, 417 P3d 548, *vac'd and remanded for recons*, 365 Or 194 (2019), this court affirmed the dismissal of a petitioner's untimely petition, holding that the petition did not fall within the

*Gutale* requires this court to consider petitioner's situation, which in this case includes the circumstances of his mental illness throughout the limitation period; to disregard those circumstances would be to disregard that standard.

Thus, the state's argument invites this court to apply the holding in *Fisher* in a manner that I think is inconsistent with the Supreme Court's recent decisions clarifying the standard for assessing whether grounds for relief were "reasonably available." I would decline to do so.

## IV.  CONCLUSION

For the reasons discussed above, I would conclude that the allegations in petitioner's petition are sufficient to bring his petition within the escape clause of ORS 138.510(3), and that the trial court erred in granting the state's motion to dismiss petitioner's petition, and that we should reverse and remand this case. Therefore, I respectfully dissent.

---

escape clause of ORS 138.510(3). In that case, the petitioner argued, among other points, that the escape clause required "a circumstances-specific analysis." 290 Or App at 630. This court rejected that argument, citing *Fisher* for the proposition that the "reasonableness of a petitioner's failure to act on information that is available" cannot trigger the escape clause, and describing *Fisher* as a "considered" decision that was "based on engaged analysis." *Id.* at 628, 631. However, the Supreme Court allowed review of this court's decision in *Hernandez-Zurita*, vacated that decision, and "remanded to the Court of Appeals for reconsideration in light of *Gutale v. State of Oregon*, 364 Or 502, 435 P3d 728 (2019), and *Perez-Rodriguez v. State of Oregon*, 364 Or 489, 435 P3d 746 (2019)." 365 Or at 194.

Here, because *Fisher* is distinguishable from the instant case, it is unnecessary to determine how the Supreme Court's decision to vacate and remand in *Hernandez-Zurita* in light of *Gutale* and *Perez-Rodriguez* bears on the continued viability of *Fisher*. Nevertheless, I agree with the majority that some aspects of the analysis in *Fisher* are "no longer viable" in light of the Supreme Court's opinion in *Gutale*. *See* 315 Or App at 416.